Diana TURGEON, Plaintiff–Appellant,

v.

**PREMARK INTERNATIONAL,
INC., Defendant–Appellee.**

No. 95–3144.

United States Court of Appeals,
Seventh Circuit.

Argued April 8, 1996.

Decided June 25, 1996.

H. Candace Gorman (argued), Chicago, IL, for Plaintiff-Appellant.

Philip A. Miscimarra (argued), William A. Cirignani, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant-Appellee.

Before POSNER, C.J., and ILANA DIAMOND ROVNER and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

In a corporate restructuring of its employee benefits programs, Premark International, Inc. eliminated Diana Turgeon's position as manager of employee benefits. Three new, somewhat different positions were created, and Ms. Turgeon contends she should have been placed in one of them—manager of welfare plans. When she did not receive the position, she filed a charge with the Equal Employment Opportunity Commission and, ultimately, an action, pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*, claiming, among other things, that the company engaged in unlawful sex discrimination and retaliation against her. The claim based on sex discrimination went to a bench trial for eight days in the summer of 1994 and Ms. Turgeon lost. She appeals from that result as well as a prior dismissal, pursuant to Premark's motion for summary judgment, of her retaliation claim.

Magistrate Judge W. Thomas Rosemond, Jr., sitting by consent of the parties as the trier of fact, made findings on the sex discrimination claim as summarized here. Ms. Turgeon began working for Premark's predecessor company, Dart and Kraft, as a secretary in 1981, at a yearly salary of $15,080. She received steady promotions and salary increases over the years. In 1984 she was promoted to the position of tax compliance coordinator, with a 9.7 percent pay increase. In 1985 she was promoted again, with a 27 percent pay increase.

In 1986 Premark was created in a "spin-off" when Dart & Kraft became Kraft, Incor-

porated and Premark International. When the spin-off occurred, some people, including some men, lost their jobs. Ms. Turgeon remained employed as a Premark employee, where she worked in employee benefits at the company headquarters. While she worked at Premark in the benefits department, the department underwent at least four reorganizations.

In 1986 she was promoted to the position of manager of benefits compliance and welfare plans, with a 30 percent salary increase. She was then earning $36,400 a year. In 1987 she became a benefits consultant at a 9.9 percent salary increase—to $40,000. In 1988 she was earning $43,000. At this time, both the compensation department and the benefits department workers were virtually all women. However, Ms. Turgeon's immediate supervisor was Dave Compton, who, in Turgeon's view, lacked leadership skills.

During a period of restructuring at Premark in the fall of 1988, Ms. Turgeon received an offer of employment as a benefits consultant with the Amoco Corporation at a salary of $56,000. She conveyed information about the offer as well as her dissatisfaction with Mr. Compton to her superiors. To counter the Amoco offer, Mr. Wallace Nichols, Premark's vice-president of benefits and compensation, ultimately offered Ms. Turgeon a position as manager of employee benefits at a salary of $57,000.

However, from the time Premark was formed in 1986, there were problems with the effectiveness of the benefits department. It was in the April 1989 restructuring that Ms. Turgeon's position was eliminated and her employment terminated. In this restructuring, the department was organized under three functional specialists, which were to be highly qualified technical people with expertise in the areas of government regulations, accounting, and benefits plan design. The hope was that the company would then have people who could themselves do the bulk of the work on benefit plans, rather than using outside consultants as was the previous practice. Ms. Turgeon herself admitted at trial that eliminating the need for outside consultants would be a big cost savings for Premark.

In June 1989, Ms. Barbara Manny was hired to be director of compensation and benefits for Premark's worldwide operations. Before she was hired, the restructuring plan was discussed with her, and she agreed with the wisdom of filling managerial positions with technical specialists. Neither she nor her predecessor, Mr. John Gleason, considered Ms. Turgeon qualified for the new position. In addition, Ms. Diana Krause–Stetson, the senior attorney in Premark's legal department who was responsible for employee benefits matters, believed that Ms. Turgeon's lack of technical competence had a negative impact on the benefits department. She stated that Ms. Turgeon was not training people how to function as experts, and that contracts were not being written properly.

Mr. Nichols, Mr. Gleason, and Ms. Krause–Stetson considered Ms. Turgeon deficient in knowledge of legal matters regarding benefits plans and in accounting regulations. In addition, Ms. Turgeon was not a certified employee benefits specialist. In order to be such an expert, one must complete a program consisting of ten courses, each focusing on a different aspect of employee benefits. Ms. Turgeon had taken and passed only the first examination.

Magistrate Judge Rosemond found that Premark did not discriminate against Ms. Turgeon on the basis of sex with respect to any aspect of her employment nor in regard to the severance benefits she received. Ms. Turgeon contends that those findings are clearly erroneous; she argues that she has proved discrimination both directly under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), and indirectly under *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

 Discriminatory intent is a question of fact subject to review under the "clearly erroneous" standard. *Anderson v. Bessemer City, North Carolina*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Our review of the district court's findings of fact is deferential. *Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602, 113 S.Ct. 2264, 124

L.Ed.2d 539 (1993). We must distinguish between a situation in which "we *think* that if we had been the trier of fact we would have decided the case differently and the situation in which we are *firmly convinced* that we would have done so." *Carr v. Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007 (7th Cir.1994).

■ After a discrimination claim is tried on the merits, we go directly to the question of whether a plaintiff has carried her burden of proof that the reason for her termination was discriminatory. Under the *McDonnell Douglas* framework, "[e]ven if the reasons proffered are eventually found by the trier of fact not to be the real reasons for the adverse treatment, to prevail the plaintiff must still carry his ultimate burden of persuasion—to prove by a preponderance of the evidence that an illegal motive was at work." *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 522 (7th Cir.1994). Similarly, under *Price Waterhouse*, a plaintiff must show that gender played a part in an employment decision. Prior to the amendments in the Civil Rights Act of 1991[1]—amendments which no one contends are relevant to this case—a defendant could attempt to avoid liability by showing that it would have made the same decision even if gender had not been taken into account. However, under any scenario, "[w]hether the defendant intentionally discriminated against the plaintiff is, of course, the ultimate factual inquiry in a Title VII case." *Andre v. Bendix Corp.*, 774 F.2d 786, 792 (7th Cir.1985); *see also Gehring v. Case Corp.*, 43 F.3d 340 (7th Cir.1994). Our task, then, on this appeal is to determine whether the magistrate judge's findings that Premark's decisions were not discriminatory were clearly erroneous.

■ Ms. Turgeon showers us with facts and arguments in her attempt to convince us that error exists. She argues that Premark's contention that she was unqualified for the new position is unworthy of belief. But Magistrate Rosemond, who heard the evidence, believed the witnesses who said they thought she was unqualified for the new position. We do not know whether, if we saw the witnesses, we would reach the same result, but we do know we cannot say that the finding is clearly erroneous.

■ On a similar point, Ms. Turgeon contends that the finding that she was not qualified is inconsistent with a finding that she had an exemplary work record. We see no error in finding that a person with a good work record in the past is not qualified for a specific job when that job is somewhat more technical than the one previously held. Ms. Turgeon also finds suspicious the fact that Ms. Krause–Stetson felt that Ms. Turgeon's performance was poor, while everyone else apparently said it was exemplary. However, the fact that one person in the company disagrees with the prevailing evaluation of an employee's work record is not surprising. It is possible that Ms. Krause–Stetson's experience with Ms. Turgeon was different from that of other people. That people do not agree on the quality of someone's work does not immediately add up to sex discrimination.

■ Ms. Turgeon also makes the general claim that if she were a male, she would not have been terminated and her severance pay would have been better. As to the termination issue, there is virtually nothing in the record to support her contention and much to undermine it. In its benefits department, Premark employed primarily female employees and not just in lower level jobs. There were 15 employees in the department; 12 were female and 3 were male. In the compensation department, three of four people were female. When the departments were combined, 12 of the employees were female and 1 was male. This pattern continued after Ms. Turgeon's termination. Ms. Turgeon herself had been favorably treated throughout her employment. In addition, a woman, Barbara Manny, was hired as director of compensation and benefits for the entire company. The record also shows that the employment of men as well as women had been terminated by the company in the past. In this environment, that some men were employed or even that sometimes a man was promoted or hired rather than a woman does not by itself support a finding of

---

**1.** *See* 42 U.S.C. §§ 2000e–2(m) and 2000e– 5(g)(2)(B)(1).

discriminatory motive. Even while saying this we are mindful that to be free from discrimination is an individual, not a group entitlement. Nevertheless, evidence of a tendency to employ and promote individuals in the protected groups can be relevant evidence of a company's motivations. As we said in the context of racial discrimination, "[s]uch a pattern, in which blacks sometimes do better than whites and sometimes do worse, being random with respect to race, is not evidence of racial discrimination." *Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 931 (7th Cir.1993).

 On the issue of severance pay, the district court findings are—to say the least—sketchy. Ms. Turgeon argues that she received less in severance benefits than a similarly situated male employee, Thomas Tulinski. And the record shows that she did. However, she received severance pay in an amount greater than the existing Premark severance pay plan in effect as of May 1989. She received 20 weeks of severance pay, which included 7 weeks of standard severance (the amount available for individuals with 7 completed years of service as Ms. Turgeon had), a voluntary payment equal to an additional 13 weeks "special severance" (in total, the payment equaled her full salary for five months), COBRA conversion rights, and outplacement assistance of $6,000 paid by Premark.

Mr. Tulinski, on the other hand, remained on the payroll five months after he was "terminated." He received 32 weeks severance payments, and in addition, at Wallace Nichols' suggestion, he requested an extension of his severance benefits and was granted a 3–month extension. He was also reimbursed for the COBRA payments he made while he was receiving severance payments.

On these facts, was it erroneous for the trier of fact to find that there was no discrimination at work? The severance packages were vastly different. What was the reason for the disparity? The answer is not difficult to find. Ms. Turgeon worked for the company for seven years. Mr. Tulinski had worked for the company for nearly 30 years—almost from the time he graduated from high school.

Despite the obvious differences between her and Mr. Tulinski, Ms. Turgeon makes much of what she sees as Premark's designation of Mr. Tulinski as a "comparable" before the Equal Employment Opportunity Commission. Although the argument is not entirely clear, to the extent that she is saying that because he was termed a "comparable," he and Ms. Turgeon should have received the same treatment, the argument must be summarily rejected. What Premark said before the EEOC is:

Respondent has however identified a male employee it treated in the same manner as Charging Party. Tulinski was terminated without notice and his job was eliminated.

We do not read that statement to mean that Ms. Turgeon was entitled to the same severance benefits as Mr. Tulinski. It would be a strange and unfortunately rigid world if long-time, loyal employees, who lose their jobs after 30 years of service, could not be given some consideration, even if that consideration exceeded that to which they were strictly entitled or that which some other employee received.

Ms. Turgeon also calls attention to the severance granted to a Victor Fiszer. He had been employed for four years. He received four weeks regular severance and eight weeks special severance. He apparently did not receive paid COBRA benefits. We are at a loss to discern how these facts help Ms. Turgeon's case. In addition, there were women to whom extraordinary assistance was given. For example, one woman, whose job was scheduled to terminate on April 30, 1991, was allowed to remain employed until March 31, 1992.

In the totality of the circumstances of this case, while we could—and do—wish for specific findings from the district court, it is not clearly erroneous for the trier of fact to find that there was no discrimination based on sex in the granting of severance benefits. And to cut the magistrate judge a break, he may have thought the issue too obvious to merit significant comment.

A final issue in this case concerns the dismissal on summary judgment of Ms. Turgeon's retaliation claim. Essentially, the claim is that after her employment with Pre-

mark ended, she applied for a position with Kraft Foods. Before her interview for the position, Wallace Nichols (who we met earlier) told a person at Kraft, apparently at a chance meeting, about Ms. Turgeon's sex discrimination charge against Premark filed with the EEOC. Based on Nichols' statement to the Kraft person, Ms. Turgeon filed a claim of retaliation against Premark with the EEOC. After the claim arrived in the district court and before the parties consented to the jurisdiction of the magistrate judge, District Judge James B. Zagel dismissed it on summary judgment because Ms. Turgeon was not an employee of Premark at the time Nichols made the comments, and therefore, under the judge's interpretation of *Reed v. Shepard,* 939 F.2d 484 (7th Cir.1991), and *Koelsch v. Beltone Electronics Corp.,* 46 F.3d 705 (7th Cir.1995), the claim could not succeed. In addition, the judge assessed a sanction of $400 against Ms. Turgeon.

■ Ms. Turgeon does not vigorously contest either the dismissal of the claim or the sanction. In fact, she only devotes a page and a half of her 46–page brief to the issue and merely raises it, she says, to "preserve it before a panel of this Court sitting *en banc.*" Furthermore, Ms. Turgeon did not even include a copy of Judge Zagel's order in the appendix of her appellate brief, as required by Circuit Rule 30(a). Under these circumstances, we see no reason to disturb Judge Zagel's dismissal of the retaliation claim or his sanction order.

Accordingly, the judgment of the district court is affirmed.

ILANA DIAMOND ROVNER, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's holding as to Turgeon's sex discrimination claim, and, although I am convinced that the district judge misapprehended an earlier panel's holding in *Reed,* 939 F.2d at 484, as barring *all* retaliation claims by former employees, I, too, see no reason to vacate the grant of summary judgment on Turgeon's retaliation claim in this particular case. As the majority observes, Turgeon raised the claim in a most cursory fashion, and failed to point to specific facts in the record that would support a

finding of retaliation. I therefore agree that Turgeon did not meet her burden of demonstrating the existence of a triable issue that would preclude summary judgment on this claim.

The Rule 11 sanctions are, however, a different matter. Although Turgeon's brief provides us with an inadequate basis for overturning summary judgment, it is certainly sufficient to alert the court to the impropriety of upholding the Rule 11 sanctions. Turgeon's failure, moreover, to include a copy of the district judge's order as required by Cir. Rule 30(a) does not create any impediment to our effective review of the narrow issue of whether her retaliation claim was based on a viable legal theory. Indeed, her presentation was sufficient, as she stated, "to preserve the issue for *en banc* review."

Under Rule 11, an attorney is required to certify that to the best of her knowledge, any claim she raises is "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.P. 11(b)(2). As this court is well aware, the majority of courts that have considered the issue are in agreement that Title VII protects former (as well as current) employees from acts of retaliation at the hands of their former employers in matters that relate to the employment relationship. *See, e.g., Berry v. Stevinson Chevrolet,* 74 F.3d 980, 985 (10th Cir.1996); *Nelson v. Upsala College,* 51 F.3d 383, 386–89 (3d Cir.1995); *EEOC v. J.M. Huber Corp.,* 927 F.2d 1322, 1331 & n. 41 (5th Cir.1991); *Bailey v. USX Corp.,* 850 F.2d 1506, 1509–10 (11th Cir.1988). Indeed, the issue can hardly be regarded as frivolous since the Supreme Court has recently granted certiorari to consider the circuit split created by the Fourth Circuit's contrary holding in *Robinson v. Shell Oil Co.,* 70 F.3d 325 (4th Cir.1995) (*en banc*), *cert. granted,* — U.S. ——, 116 S.Ct. 1541, 134 L.Ed.2d 645 (1996). In my view, then, the district judge plainly erred in sanctioning Turgeon for raising· a retaliation claim against Premark. Although Turgeon was no longer Premark's employee when the alleged retaliation took place, Premark was still in a position to ruin her prospects for obtaining

new employment in her field and was alleged to have done exactly that. In allowing the sanctions to stand, I fear that we leave the mistaken impression that Turgeon's retaliation claim was frivolous when it clearly is not. Furthermore, I question the propriety of upholding sanctions in light of *McKnight v. General Motors Corp.*, 511 U.S. 659, 114 S.Ct. 1826, 128 L.Ed.2d 655 (1994) (*per curiam*), in which the Supreme Court held that sanctioning an appellant for filing a frivolous appeal was improper where the Court had not yet ruled on the issue the appellant had raised. The Court thus vacated our sanctions in spite of the fact that the appellant's argument in *McKnight*, unlike the argument advanced by Turgeon, was directly foreclosed by circuit precedent. Under *McKnight*, then, there was plainly no basis for Rule 11 sanctions here. I would therefore vacate the sanctions, notwithstanding Turgeon's technical failure to comply with Cir. Rule 30(a).