**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2016
Decided July 26, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 15-2967

| | |
|---|---|
| SHABI Z. HUSSAIN,<br>　　*Plaintiff-Appellant*,<br><br>　　*v.*<br><br>FEDERAL EXPRESS CORPORATION,<br>　　*Defendant-Appellee*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 12 C 7693<br><br>Thomas M. Durkin,<br>*Judge*. |

## O R D E R

Shabi Hussain, a woman of Indian descent, brought this action against her employer, Federal Express Corporation (FedEx), asserting claims under 42 U.S.C. § 2000e–2, for failing to promote her because of her sex and national origin. The district court granted summary judgment in FedEx's favor. We conclude, however, that Hussain raised genuine issues of material fact on both theories, and so we vacate the district court's order and remand.

**I**

Hussain started working for FedEx in 1996 as a handler; later she became a courier at the South Holland station. Under FedEx's hierarchy, couriers and handlers report to operations managers; operations managers report to senior managers; and senior managers report to a managing director. This case concerns Hussain's effort in 2010 to secure a promotion to senior manager. That decision lay in the hands of the managing director of her district, which covers several stations. At the relevant time, George Truesdale was the managing director of the Chicago Metro District.

Hussain worked at FedEx for almost 15 years before she sought a promotion to the senior-manager position at issue in this case. Three years after she started at the company, in 1999, FedEx promoted her to operations manager at the downtown Chicago facility. In 2008 she transferred locations. For family reasons and to broaden her management experience, she moved to a station in New York. Under her hiring agreement, she had to work there for 18 months before she could apply for a new position. Soon after transferring, though, Hussain asked to return to Chicago for personal reasons. Because the 18 months had not run, FedEx told Hussain to request a hardship transfer, which she did and which it granted. FedEx planned to make her an operations manager in downtown Chicago. Hussain preferred either the Hillside station (where the pay was slightly less than in downtown Chicago, and the workload slightly lighter) or promotion to senior manager at the downtown Chicago station.

FedEx allowed Hussain to interview for operations manager at Hillside. She did not get the position, and so she remained an operations manager in downtown Chicago. She was not, however, eligible for promotion to senior manager there. For one thing, the hardship waiver permitted only a lateral placement. In addition, Truesdale had told the human-resources department that Hussain "is not ready" to be senior manager. FedEx hired Erik Miglans for the senior-manager position in downtown Chicago.

In 2010, some positions for senior manager opened up. First, a position opened at Hillside. Hussain's supervisor, Senior Manager Glenn Girtman, told Hussain not to apply because Truesdale already had decided to hire Steve Franzese, the runner-up to Miglans. Several months later, Girtman left his position as senior manager, creating another opening. Truesdale appointed John Griffith—an evening-shift operations manager in downtown Chicago—as acting senior manager for evenings. Truesdale then solicited applications for that job.

Including Hussain, 11 employees applied for this position. Michael Rodriguez, from Human Resources, recommended that Truesdale interview the one incumbent senior manager who had applied and the top four operations managers as ranked by their last

three performance reviews. Hussain's last three scores were 3.6, 3.9, and 3.9 out of 4. This average of 3.8 tied Hussain for third highest score. The two candidates she tied with had significantly less management experience. (Griffith had a performance review average of only 3.23.) Ultimately, Truesdale decided to interview all nine remaining candidates (two had withdrawn).

A four-person panel interviewed each candidate. Truesdale created the panel, which consisted of Truesdale, two people who reported directly to him—Senior Manager Miglans and Senior Manager Marc Morris—and Rodriguez. The panel asked each candidate to give a short presentation and answer the same six questions. Each panelist scored each candidate from 1 to 5 for each question. After each interview, the panel members shared their scores, discussed the candidate's responses, and formulated a "consensus" score for each question. Here is how they ranked candidates based on their total consensus scores: Mike Phillips (30), John Griffith (27), Robert Smith (26), Hussain (24), Steve Strong (24), Regis Frazier (24), Roy Isaksen (22), Lori Piazzi (19), and Wallace Loney (17).

Truesdale hired Griffith. Although the person with the highest interview score is typically hired, Mike Phillips's supervisor told Truesdale that Phillips (who had been working in St. Louis) was not ready for a large station. Griffith had the second highest interview score, but Truesdale's notes reflect that the score alone did not drive his decision. He also took other factors, some subjective, into account, including experience working evening shifts at a large, diverse, inner-city location and "interpersonal skills." He based those evaluations on scores given to the managers by their direct subordinates, his observations of the candidates in disciplinary-appeal meetings, and their overall "fit" with other senior managers.

Truesdale offered to provide the unsuccessful candidates feedback on how to improve, and Hussain accepted. After briefly discussing her performance at the interview, Truesdale panned her behavior at an earlier meeting, telling her that she was "overly aggressive" in criticizing others, too emotional, and had inappropriate facial expressions. He also referred to national origin, telling her to "be more Indian." When Hussain replied that "I am Indian," Truesdale pivoted and advised, "you should be more like an American Indian. You should be stoic. You should be expressionless."

Disturbed by these comments, Hussain filed an internal complaint that Truesdale refused to promote her for discriminatory reasons. FedEx investigated the charge and admonished Truesdale for "lack of sensitivity" in his meeting with Hussain. It also recommended that senior management modify the promotion process to exclude senior managers from participating on hiring panels for other senior managers. And it

suggested that the company help Hussain improve her interpersonal skills. Hussain found all of this insufficient, and so she sued FedEx under Title VII, alleging that Truesdale did not promote her because of her sex and national origin.

The district court granted FedEx's motion for summary judgment. It ruled that none of the evidence Hussain submitted could support a finding that bias motivated Truesdale. Truedale's "Indian" comments, it said, were not direct evidence of bias. Moreover, the court found, Hussain was not qualified for the position for which she applied because she had received a lower interview score than three of the other candidates. Hussain appeals.

## II

Before this court, Hussain argues that the district court failed to view the record in the light most favorable to her. She challenges its conclusion that Truesdale's comments in the feedback meeting were not evidence of sex or national origin discrimination. Under the direct method Hussain had to present either direct evidence that would prove discriminatory conduct, see *Deets v. Massman Constr. Co.*, 811 F.3d 978, 982 (7th Cir. 2016), or enough circumstantial evidence to allow the trier of fact to infer intentional discrimination by the decisionmaker, see *Whitfield v. Int'l Truck and Engine Corp.*, 755 F.3d 438, 443 (7th Cir. 2013). To prevail under the indirect method, Hussain needed to satisfy the oft-cited burden-shifting test. See *McDonnell Douglas v. Green*, 411 U.S. 792, 802–03 (1973); *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016) (applying burden-shifting test to promotion claims). The parties discuss both methods, illustrating yet again the considerable overlap in analysis and proof they entail—a point we have noted when questioning whether a simpler approach would be preferable. See, *e.g.*, *Hitchcock v. Angels Corp.*, 718 F.3d 733, 737 (7th Cir. 2013); *Coleman v. Donahue*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring); see also *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905–06 (7th Cir. 2015). We have no need to clean up the law on this point, however, because the existence of two avenues of proof does not affect the outcome here.

We consider first Hussain's national-origin claim. Truesdale's advice about how Hussain could help her chance at promotion—become "more Indian" or more "stoic like an American Indian"—bears two reasonable and equally problematic interpretations. A reasonable juror could conclude that, for Truesdale to promote Hussain, she needed to embody a trait stereotypically associated with a national origin—American Indian—different from hers. Alternatively, Truesdale may have envisioned desirable features for a person of Indian descent and wanted Hussain to reflect that stereotype—she needed to be "more Indian." Either way, this is evidence of impermissible bias. Title VII forbids an employer to base a hiring decision on a candidate's ability to fit a stereotype of her

national origin, or her inability to fit a stereotype of a different national group or gender. See *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) ("[W]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group.")

The case for national-origin discrimination was thus one for a trier of fact. It is hard to imagine a blunter application of national-origin stereotyping than Truesdale's advice to Hussain to "be more Indian." A jury would not have to consider his immediate "clarification"—be more like an *American* Indian—as a believable description of his meaning, and even if it were, it just shifts the problem from bias against one group (South Asian Indians) to another (American Indians, often referred to as Native Americans).

Hussain also met her burden of production with respect to sex discrimination. The evidence, including Truesdale's comments that Hussain was "overly aggressive," "too emotional," and showed too much facial expression, reasonably suggests that Truesdale did not promote her because of her sex, or at least a trier of fact could so conclude. See *Price Waterhouse*, 490 U.S. at 250 ("[A]n employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender."); *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224–25 (1st Cir. 2012) ("A gender-stereotyping claim arises when an individual suffers an adverse employment action because she either conforms or fails to conform to some stereotype or stereotypes attributable to her gender.").

The reasonableness of construing Truesdale's comments as reflecting sex bias is bolstered by two other pieces of evidence. First, Rodriguez, who was present at the meeting where Truesdale thought Hussain's behavior was inappropriate, testified that he saw nothing wrong with Hussain's conduct. The second, collectively, are Hussain's performance reviews. In 2007-08, her supervisor portrayed her leadership and ability to manage her direct reports as "outstanding." The review also said that Hussain "can stand up for what she feels is right and also knows how to accept corrective criticism when needed. This will help in her development into a senior manager." Hussain's review from the next year reveals similar enthusiastic feedback.

Beyond these comments, Hussain has provided evidence that Truesdale has a troubling pattern of promoting only men to senior management. *Cf. Turgeon v. Premark Int'l, Inc.*, 87 F.3d 218, 222 (7th Cir. 1996) ("[E]vidence of a tendency to employ and promote individuals in the protected groups can be relevant evidence of a company's motivations."). We see in the record that out of seven positions for senior manager that Truesdale filled during his six years as managing director of the Chicago Metro District, he *never* promoted a woman, despite eligible women applying for each opening. He made

a woman a senior manager once, but she already was a senior manager at a different location and did not need a promotion. When Truesdale retired in 2013, of the twelve or so senior managers reporting to him, none was a woman. In addition, FedEx chastised Truesdale in 2008 for transferring management responsibilities away from a female to a male senior manager so that he could receive a promotion. When Truesdale later tried to demote that female, FedEx overruled him and chastised him "for allowing his frustration … to impair his judgment when issuing discipline" to her.

FedEx counters that, despite any insinuations from all this evidence, Truesdale had a legitimate, nondiscriminatory reason for not promoting Hussain. Truesdale says that Hussain's lower "consensus" score, determined by the entire panel, cost her the promotion. When a hiring decision is made by a committee that is untainted by the bias of one of its members, "the causal link between that prejudice" and the adverse employment action is severed. *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990); see *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1063 (7th Cir. 2003). But this record permits a finding that Truesdale did not rely solely on the "consensus" scores; he relied on subjective factors (including, importantly, his observations and assessment of "fit") evaluated in his sole discretion. A rational juror also could conclude that Truesdale's bias infected the committee's "consensus" scoring. Two of Truesdale's direct subordinates were on the panel, a practice that calls into question the independence of their judgments, and one that FedEx disallowed after it discovered that it had occurred in this case. Truesdale's score for Hussain was lower than the score Hussain received from both of these direct reports. FedEx replies that these two subordinates said that Truesdale did not "influence or pressure me directly or indirectly to score any applicant in a particular manner." But one of them later admitted that he had very little recollection of the interview process or the scoring decisions. So the "no influence" disclaimer need not be believed.

Because Hussain presented evidence from which a rational juror could conclude that FedEx failed to promote her because of her sex, her national origin, or both, we VACATE the judgment and REMAND for further proceedings.