**Richard T. CULLOM, Plaintiff,**

v.

**Jesse BROWN, Secretary of Department of Veterans Affairs, Defendants.**

No. 96 C 1925.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 24, 1998.

Armand L. Andry, Oak Park, IL, for Plaintiff.

Tony J. Masciopinto, Joseph M. Ferguson, Assistant United States Attorneys, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

Honesty is the best policy. Honesty is the required policy. This is a case in which Defendant argues that the employee evaluations it prepared were not honest. This is a case in which Defendant readily admits that it did not follow its own written policies. This is a case in which the Defendant must live with the consequences of its actions.

The Court conducted a three-day bench trial on October 20–22, 1998, to decide whether the plaintiff, Richard T. Cullom ("Plaintiff"), was denied a promotion by the Department of Veteran Affairs, Hines V.A. Hospital ("Defendant" or "VA") in retaliation for his having previously filed Equal Employment Opportunity ("EEO") complaints against the Defendant.[1] The case presents the novel question of whether Plaintiff was retaliated against by receiving a favorable work evaluation while being refused pro-

---

**1.** Plaintiff filed a two-count complaint. Count I alleged a claim for race discrimination. This count was dismissed by Judge Joan B. Gottschall on March 20, 1998 in granting Defendant's motion for summary judgment. The case went to trial on Count II, Plaintiff's claim for retaliation.

motion. Alternatively, the case raises the question of whether Plaintiff was retaliated against by reason of Defendant's failure to provide Plaintiff with an honest evaluation and the remedial benefits to which he was then entitled. The answer to both questions is yes. The irony is that this conduct was taking place in Defendant's personnel department, which is responsible for properly implementing employment practices and which blatantly disregarded its own rules and procedures in its dealings with Plaintiff.

The Court has carefully considered the testimony of the seven witnesses who testified, the numerous exhibits introduced into evidence, the written submissions from the parties, and the thoughtful closing arguments of counsel. The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I. BACKGROUND FACTS

### A. PLAINTIFF'S EMPLOYMENT HISTORY PRE–VA

Plaintiff is a 55–year–old African–American male who grew up in Detroit, Michigan. Plaintiff served as a paratrooper and was honorably discharged from the Army in 1964, at which time he began work as a laborer for Chrysler Corporation. Plaintiff held a variety of jobs at different companies in Detroit between 1966 and 1973. During that time he attended Detroit Business Institute where he received a certificate of computer training. After moving to Chicago in 1973, Plaintiff worked in a glass business for several years and then attended junior college. In 1978 he went to work as an EEO specialist for the Department of the Army. He later earned a bachelor's degree. In approximately 1987, Plaintiff obtained a lateral transfer to the Department of the Navy as a classification specialist where he was eventually promoted to the GS–11 grade. During his tenure at the Navy, he was rated as "Fully Successful" at both the GS–9 and GS–11 levels.

### B. EMPLOYMENT HISTORY AT VA

#### 1. Initial Employment and First EEO Complaint.

Plaintiff has endured a rocky employment history with the VA. He began employment with the VA at Hines Medical Center in September, 1990, as a GS–9 staffing specialist, on a temporary appointment. (Def.'s Ex. 5.) His immediate supervisor, an African–American female, concluded that his work was unacceptable and terminated Plaintiff effective March 29, 1991. (Def.'s Ex. 7.) Plaintiff filed an EEO complaint seeking reinstatement alleging that he had been discriminated against on the basis of his sex. During the year and a half the EEO complaint was pending, Plaintiff worked for Cook County as a job analyst.

Plaintiff's EEO complaint was eventually settled. Under the terms of the settlement agreement, Plaintiff was reinstated as a full-time GS–9 personnel staffing specialist effective October 18, 1992 although he was under probationary status for the first 180 days. (Def.'s Ex. 12.) The agreement set forth written performance standards for Plaintiff and expunged from the personnel files any reference to his termination.

#### 2. Reinstatement at Hines and Second EEO Complaint.

Plaintiff's position after reinstatement had the promotion potential to GS–11 following one year of successful service as a GS–9. (Def.'s Ex. 19.) This was a non-competitive career ladder position, meaning that an increase in grade level was not dependent upon a competitive process where he would be evaluated against other people bidding for the position. Plaintiff's responsibilities included GS–11 level work, some of which he performed adequately.

Dean Lapcewich ("Lapcewich") supervised Plaintiff. Lapcewich refused to explain to Plaintiff the steps necessary for promotion to GS–11. Throughout the course of his supervision of Plaintiff, Lapcewich expressed displeasure with the quality of Plaintiff's work and periodically returned Plaintiff's work with its deficiencies highlighted. Plaintiff also requested a series of training opportunities to assist him in his new position and, as a result, Lapcewich put together a comprehensive training program for Plaintiff and autho-

rized him to attend training courses. (Def.'s Ex. 21–24.)

Plaintiff's first performance review under Lapcewich covered the period of October 18, 1992 through March 31, 1993. This review required the signature of the employee's direct supervisor, Lapcewich, and the supervisor's boss, Peter Hennigan ("Hennigan"), the Assistant Personnel Officer. Plaintiff was given a rating of fully successful on a scale of 1) Outstanding, 2) Highly Successful, 3) Fully Successful, 4) Minimally Successful, and 5) Unacceptable. (Def.'s Ex. 29.) An employee must achieve at least a rating of fully successful to be eligible for promotion. According to Lapcewich, he had proposed a rating of minimally successful, but Hennigan, who did not testify, overruled him. Lapcewich testified that Hennigan insisted on giving Plaintiff a fully successful rating in order to avoid a future EEO proceeding with Plaintiff. Lapcewich prepared a narrative discussing Plaintiff's performance in four areas and in each area assigned a fully successful level to Plaintiff's work. (Def.'s Ex. 29.) Contrary to the written rating, Lapcewich testified that Plaintiff made numerous errors in his work, failed to demonstrate competence, and was not performing at a level which would justify a promotion to GS–11. Lapcewich did not inform Plaintiff of his personal evaluation of Plaintiff as minimally successful rather than fully successful. As a result, Plaintiff believed that he had earned a fully successful rating. On August 23, 1993, Lapcewich met with Plaintiff to discuss performance standards, however, Plaintiff refused to sign for the standards. (Pl.'s Ex. 20.)

In the summer of 1993, Plaintiff met with an EEO counselor and asserted that he was the victim of reprisal for having previously filed a complaint in that he had not been promoted to a GS–11. (Def.'s Ex. 31.) The EEO counselor conducted an investigation, and interviewed Lapcewich, Hennigan and Marvin Servais ("Servais"), Chief of Human Resources Management Service. In an interview with the EEO counselor, Lapcewich stated that Plaintiff's performance was fully successful at the GS–9 level. (Def.'s Ex. 33.) The EEO counselor was unable to settle the complaint. In September, 1993, Plaintiff filed his second EEO complaint alleging reprisal and discrimination on the part of Lapcewich, Servais and Hennigan for failing to promote him to GS–11. (Def.'s Ex. 34.) This irritated Lapcewich, who was already unhappy because his supervisors were forcing him to rate Plaintiff as fully successful.

In December, 1993, Plaintiff and Lapcewich met for the purpose of a progress review of Plaintiff's work. Plaintiff was given a progress review rating of "fully successful or better." (Def.'s Ex. 38.) Lapcewich testified that Hennigan and Servais directed him to provide such a rating despite his personal observations that Plaintiff was making too many errors. During the meeting, Plaintiff again asked when he was going to be promoted. (Def.'s Ex. 39.) The meeting deteriorated and Plaintiff left Lapcewich's office prior to the meeting's conclusion. At no time did Lapcewich ever communicate to Plaintiff orally or in writing that the rating did not represent Lapcewich's true evaluation of Plaintiff's work, nor did Lapcewich place Plaintiff on a performance improvement program, which was required in the event of a rating of minimally successful.

In the Spring of 1994, Plaintiff's second EEO complaint was settled by means of a settlement agreement dated April 1, 1994. (Def.'s Ex. 42.) The settlement called for Plaintiff to be detailed to the North Chicago VA Medical Center for nine months of training as a personnel intern. The settlement made no mention of a possible promotion to GS–11.

### 3. Training Program in North Chicago.

Plaintiff participated in the training program in North Chicago from April 25, 1994 through April 2, 1995, when he returned to Hines. While at the training program, Plaintiff was still under the technical supervision of Lapcewich, who had the responsibility for making promotion decisions affecting Plaintiff. Robert Grant was the training officer at North Chicago who supervised the training but Grant had no authority to promote Plaintiff. At no time during this training period did Lapcewich ever communicate with Grant regarding Plaintiff's progress. Because Lapcewich remained Plaintiff's supervisor

through April 1, 1995, Plaintiff could not be promoted without Lapcewich's recommendation.

On May 20, 1994, approximately one month after Plaintiff began his training program, Lapcewich prepared a performance appraisal for the period April 1, 1993 through March 31, 1994. Plaintiff was once again rated as fully successful. Plaintiff did not recall receiving this appraisal and his signature does not appear on the document. (Def.'s Ex. 45.) Lapcewich testified that he wanted to rate Plaintiff as minimally successful, but was overruled by Hennigan. Lapcewich prepared a narrative with respect to each of the five elements of Plaintiff's work. He rated Plaintiff as fully successful in four out of the five elements and raised the fifth element to fully successful at Hennigan's direction. (Def.'s Ex. 45.) Lapcewich did not expect Plaintiff to return to Hines following the training and made no effort to follow up on his progress. He made no further performance evaluations of Plaintiff's work and he did not recommend Plaintiff for promotion to GS–11. Lapcewich was irritated at Plaintiff by reason of Plaintiff's prior EEO complaints and settlements and retaliated against him by not recommending his promotion and by not telling Plaintiff why he was not being promoted.

In February, 1995, Grant sent a memo to Max Collier, who was not identified at the trial, which described the various disciplines in which the program provided training to Plaintiff, advised Collier that Plaintiff had successfully completed his rotation in all major areas of human resources management, and concluded that Plaintiff was "an excellent candidate for placement." (Def.'s Ex. 54.) Plaintiff remained at North Chicago following his completion of the training program until the VA could find a new assignment for him.

### 4. Plaintiff's Return to Hines as Labor Relations Specialist.

Plaintiff was reassigned to Hines to work under the supervision of Clare Hajduk, who testified at trial. Plaintiff worked in two capacities under Hajduk. From April 2, 1995 through February 18, 1996, he worked

as a labor relations specialist. On February 18, 1996, he was reassigned as an employee relations specialist.

A labor relations specialist provides management with labor relations advice and assists management in dealing with grievances. Plaintiff was assigned to be a labor relations specialist because there was a large backlog of labor grievances which required processing. Hajduk initially met with Plaintiff to discuss the requirements of his job, to assure him that he was being given a fresh start, and to let him know that opportunities for advancement existed if he performed. During this time, there was a great deal of change going on in the VA as the three human resources departments of the three Chicago-area hospitals were consolidated into one department at Hines. According to Hajduk, Plaintiff performed acceptably as a GS–9 in processing grievances; however, he did not demonstrate initiative to do anything other than what he was assigned. She believed that he was not deserving of a promotion to GS–11 because he did not demonstrate the ability to work independently in that he needed much supervision and follow up. However, Hajduk retaliated against Plaintiff by never informing him of what he needed to do to be promoted and by never giving him an honest evaluation of his performance.

VA policy requires management to provide employees with performance standards and to review employees annually for the period of April 1 through March 31. Despite this requirement for performance standards and an annual review, Hajduk did not provide Plaintiff with standards or a written review of Plaintiff's performance for the April 1, 1995 through March 31, 1996 period.

### 5. Third EEO Complaint.

In July, 1995, Plaintiff contacted his EEO counselor with a third EEO complaint seeking retroactive promotion to GS–11. He requested that he be given a job description defining his duties and performance standards and critical elements against which his performance could be judged in order to achieve a promotion to GS–11. (Pl.'s Ex. 3.) Hajduk had failed to provide any of these items to Plaintiff during his tenure as a labor

relations specialist. The complaint was not resolved and he filed his formal complaint on September 18, 1995. (Def.'s Ex. 69.) This complaint forms the basis for the current litigation.

### 6. Reassignment As An Employee Relations Specialist.

On February 18, 1996, Plaintiff was reassigned by Hajduk as an employee relations specialist but maintained his GS–9 grade. (Def.'s Ex. 78.) Employee relations specialists guide and advise management with regards to a variety of employee relations issues including discipline, termination, and representation in grievance proceedings. All adverse employee related actions by management require clearance from employee relations.

Plaintiff was the only GS–9 working as an employee relations specialist at Hines. The four other specialists included two GS–11s and two GS–12s. Plaintiff's job included a variety of duties including those of a GS–7, a GS–9, and a GS–11. At this time, he was frustrated that no one would give him a date by which he would be promoted. Plaintiff was assigned seven departments for which he was responsible for providing input and guidance. Mike Harvey, a GS–12 and senior employee relations specialist, was designated to assist and mentor Plaintiff. Hajduk never prepared a written evaluation of Plaintiff while he was a GS–9, although he was entitled to annual reviews for the periods April 1 through March 31.

### 7. Suit Filed and Promotion to GS–11.

This suit was filed on April 3, 1996. Plaintiff was promoted to a GS–11 on November 10, 1996. (Def.'s Ex. 82.) At the time of Plaintiff's promotion, Hajduk discussed Plaintiff's performance with him. According to Hajduk, she recommended that Plaintiff be promoted to GS–11 even though she did not believe his performance merited the promotion. She recommended the promotion to her supervisor, Brian Boettcher, who agreed. Boettcher did not testify. Plaintiff's assignment after the promotion did not change in any significant respect. Hajduk gave Plaintiff her first performance appraisal of him on September 4, 1997, at which time she rated him as fully successful for the period from November 10, 1996 through March 31, 1997, during which time Plaintiff served as a GS–11. (Def.'s Ex. 83.) She testified that she gave him the fully successful rating because her boss, Brian Boettcher, would not let her rate him at a lower level. Hajduk stopped supervising Plaintiff in November, 1997, at which time he came under the supervision of Blanche Phillips.

Delores Glover testified that she was employed at Hines as a personnel management specialist for eight years through March 23, 1997. She explained that it was customary for GS–9 personnel specialists who received fully successful ratings to be promoted to GS–11 in one year. She also testified that those who filed EEO complaints did not receive promotions within one year.

### 8. Period From November 10, 1997 to Present.

After November 10, 1997, Plaintiff continued to work as an employee relations specialist. Blanche Phillips testified that Plaintiff is still experiencing significant work related problems. Despite this, she gave him a successful performance rating on the September 22, 1998 performance appraisal. (Def.'s Ex. 96.) She testified that she gave all employees a fully successful rating because prior to that date, she was unable to draft and distribute performance standards. In the absence of such standards, she believed it would have been unfair to give anyone less than a successful rating.

Therefore, Plaintiff was a GS–9 from October 18, 1992 until November 10, 1996. During this time all of his supervisors provided him with fully successful ratings. Although it was customary for a GS–9 to be promoted to GS–11 after one year of fully successful ratings, it took Plaintiff four years and three EEO complaints.

## II. APPLICABLE LAW

### A. JURISDICTION AND VENUE

The Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331, 1337, and

1343. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## B. RETALIATION

■ Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination against employees who participate in any charge under the Act. 42 U.S.C. § 2000e–3(a).[2] The Act makes it unlawful to retaliate against any employee in response to the employee's assertion of his rights under the Act. An actual violation of Title VII by the employer is not a prerequisite for a retaliation claim; the employee need only have brought an initial claim that challenged conduct that the employee sincerely and reasonably believed violated Title VII. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1314 (7th Cir.1989). While Plaintiff's last EEO complaint was not perfected and is not before this court, its validity is immaterial to the issue of whether adverse employment action was taken against him as a result of his protected activity. The only material issue here is whether the VA took action based on Plaintiff's complaints to the EEOC.

■ In order to prevail on a claim of retaliation, a plaintiff may choose one of two approaches. A plaintiff must either present direct evidence of discrimination or must rely on circumstantial evidence of discriminatory motive. *Smart v. Ball State Univ.*, 89 F.3d 437, 439 (7th Cir.1996). In this case, Plaintiff relies on circumstantial evidence to sustain his claim of retaliation. In order to establish a *prima facie* case of retaliation through circumstantial evidence, Plaintiff must prove that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal link between his protected expression and the adverse employment action. *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir.1994).

■ If Plaintiff establishes a *prima facie* case of retaliation, the burden of production then shifts to the VA, requiring it to come forward with a legitimate, non-retaliatory reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If the VA rebuts Plaintiff's *prima facie* case, the burden shifts back to Plaintiff to demonstrate that the VA's reasons for not promoting Plaintiff earlier than November 10, 1996 were pretextual. *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1146 (7th Cir.1997).

■ Courts have consistently held that a plaintiff's activity in filing a complaint with the EEOC is a statutorily protected expression. *See Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir.1996); *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). In addition, it is well established that denial of a promotion is an adverse employment action. *Williams v. Pharmacia*, 137 F.3d 944, 948 (7th Cir.1998). Adverse employment actions have been broadly defined and are not limited solely to loss or reduction of pay or monetary benefits, rather it can encompass other forms of adversity. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996). In that the VA failed to promote the Plaintiff, he suffered an actionable adverse employment action.

■■ The VA does not contest that the Plaintiff engaged in protected action and that Plaintiff suffered an adverse employment action. The only element that the VA contests is the third element, whether the Plaintiff established a causal link between his protected expression in filing EEO complaints and his failure to be promoted. To establish a causal link, Plaintiff has to prove that the protected activity and the adverse action were not wholly unrelated. *Hunt–Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1014 (7th Cir.1997). Phrased

---

**2.** "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

another way, the Plaintiff must demonstrate that the VA would not have taken the adverse action "but for" the protected expression. *McKenzie v. Illinois Dep't of Trans.*, 92 F.3d 473, 483 (7th Cir.1996).

The VA has a written Performance Management System which sets forth the employment practices that supervisors and managers must integrate into their management processes. (Pl.'s Ex. 18.) According to the Performance Management System:

> Supervisors are required to assist employees whose performance ratings are minimally successful. A written counseling memorandum will be prepared for these employees by their supervisors explaining how their performance is less than fully successful when compared to their standards and what specific assistance such as formal training, on-the-job training, counseling, or supervisory guidance will be offered to help them improve.

(Pl.'s Ex. 18, ¶ 7b.)

Hines also has a written Merit Promotion Plan which establishes policies procedures, and requirements for filling positions. (Def.'s Ex. 84.) Plaintiff was in a career ladder position. Typically, an employee can be promoted to the next level after fully successfully performing at the previous level for the prescribed time period. For instance, although not automatic, a GS–9 can be promoted to GS–11 following a one-year period of fully successful performance as a GS–9. In addition to spending a year at the previous grade, an employee must also demonstrate the ability to perform the duties of the next highest grade. (Def.'s Ex. 84, ¶ 17(e).) One provision of the Merit Promotion Plan outlines these requirements.

> Promotion to the next higher grade in a career-ladder is not guaranteed and is dependent on the employee meeting all statutory and regulatory requirements (i.e. minimum qualifications, time-in-grade, etc.), the employee's demonstration of the ability to perform the duties of the next higher graded position as determined by the supervisor, and availability of work at the next higher grade. No employee is eligible to receive a career-ladder promotion if the employee has a performance rating of record or special performance rating of record less than fully successful.

(Def.'s Ex. 84, ¶ 17(e).) The irony of this case is that VA personnel management acknowledges violating many of the procedures outlined in these documents which it is responsible for enforcing throughout the VA.

██ Supervisors from the VA testified that they gave Plaintiff a better rating than he deserved in order to avoid further EEO complaints. Through this testimony Plaintiff established that his participation in a protected activity led to adequate, though false, performance evaluations. Plaintiff's immediate supervisors wished to rate Plaintiff as minimally successful. If Plaintiff's immediate supervisors had rated Plaintiff as they wished it would have entitled Plaintiff to feedback on his performance, guidance, and training. (Pl.'s Ex. 18 at B–5.) However, because he was rated more highly, Plaintiff did not receive this information or assistance, and as a result, not only did Plaintiff not receive his promotion, but he also never received a written counseling memorandum to explain the areas in which he needed to improve in order to earn his promotion. These actions occurred after the Plaintiff's complaints with the EEOC demanding a performance review of Plaintiff and consideration for a promotion. But for Plaintiff's complaints to the EEOC, he would have received the correct performance evaluation and would have received the feedback required in order to achieve promotion. Instead, as a result of his activity, he was given false evaluations and was denied a performance improvement plan to improve his work performance, thereby denying him the opportunity for promotion.

Having established a *prima facie* case for retaliation, the burden shifts to the VA hospital to produce a legitimate, non-retaliatory reason for the failure to promote Plaintiff. The VA fails to do so. The VA contends that Plaintiff was not entitled to promotion because Plaintiff did not demonstrate to management the ability to perform to management's satisfaction as required by the Hines Merit Promotion Plan. However, Plaintiff's formal ratings entitled him to a promotion. Plaintiffs ratings were fully successful and,

according to VA policies, this constituted his official evaluation. The supervisors who were ultimately responsible for Plaintiff's rating always insisted that Plaintiff receive a fully successful rating. This, along with the uncontested availability of work at the next highest level, should have entitled him to his promotion. Accordingly, the Court concludes that the VA failed to present a non-discriminatory reason for the Plaintiff being denied his promotion. The VA has not successfully rebutted the Plaintiff's *prima facie* case of retaliation, and the Court holds that it participated in impermissible retaliatory conduct.

The evidence shows behavior on the part of Plaintiff's supervisors that harmed him and that was motivated by Plaintiff's previously filing EEO complaints which leads the Court to conclude that the VA retaliated against the Plaintiff. Although one can say that Plaintiff may have used the EEO complaint system as an offensive weapon and a threat, the responsibility rested with management to evaluate him honestly and to treat him equally based on his evaluations. The VA cannot have it both ways. It cannot provide an employee with satisfactory evaluations and then deny the same employee a promotion on the theory that the evaluations are false.

Generally, a promotion is granted after one year of fully successful performance as a GS–9. Plaintiff was not eligible for a promotion prior to his entrance in the North Chicago Training Program because his work performance was allegedly sub-standard and also because he could have, but did not, press his EEO complaints to achieve a promotion to a GS–11, but instead acknowledged his need for further training. Because Plaintiff was in a training program from April, 1994 through April, 1995, the Court finds that he was not entitled to a promotion at that time. However, Plaintiff was entitled to a promotion in April, 1996, based on his evaluations and continued performance. As a result, Plaintiff was retaliated against in violation of Title VII.

## C. DAMAGES

The parties stipulated that in the event of liability, Plaintiff's damages for lost wages were $200 per month. The Court finds that Plaintiff should have been promoted on or about April 10, 1996, and awards him back pay damages of $1,400 which represents seven months of back pay from April 10, 1996, through November 10, 1996. In addition, the Court also awards Plaintiff nominal emotional damages in the amount of $100.

## III. CONCLUSION

Rules are made to be followed, not broken. The VA broke its own rules when it failed to follow its personnel practices and retaliated against Plaintiff. **The Court directs that judgment be entered in favor of Plaintiff, Richard T. Cullom, and against defendant, Jesse Brown, Secretary Department of Veteran Affairs, in the amount of $1,500, plus reasonable attorney's fees and court costs.**