In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1178

Richard Cullom,

Plaintiff-Appellee,

v.

Jesse Brown, Secretary, Department of Veterans
Affairs,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 1925--Morton Denlow, Magistrate Judge.

Argued September 29, 1999--Decided April 20, 2000

  Before Harlington Wood, Jr., Manion, and Evans, Circuit
Judges.

  Manion, Circuit Judge.  After what appeared to be
a successful period of employment as a civilian
Navy employee, Richard Cullom accepted a position
with the Hines VA Hospital as a staffing
specialist. But he soon became dissatisfied with
his employment situation and over a period of
time he filed several EEO complaints against the
Veterans Administration (VA) for discrimination.
In the hope of avoiding future complaints,
superiors at the hospital ordered Cullom's
immediate supervisor to overrate him on his
performance evaluations. This did not work.
Cullom ultimately sued the VA for race and
employment discrimination, this time claiming
that by overrating him, it made him ineligible
for a remedial program that supposedly would have
accelerated his advancement to a higher grade.
The district court noted that "the case presents
the novel question of whether Plaintiff was
retaliated against by receiving a favorable work
evaluation while being refused promotion.
Alternatively, the case raises the question of
whether Plaintiff was retaliated against by
reason of Defendant's failure to provide
Plaintiff with an honest evaluation and the
remedial benefits to which he was then entitled."
Cullom v. Brown, 27 F. Supp.2d 1089, 1090-91
(N.D. Ill. 1998). The district court concluded

that the unwarranted favorable ratings constituted retaliation in violation of Title VII, and awarded Cullom $1500 in damages plus attorney's fees and costs. We conclude that giving Cullom a rating higher than he deserved may have been a poor and even dishonest policy, but it was not unlawful retaliation. We therefore reverse.

## I. Facts

Richard Cullom is a 55-year-old black man and an honorably discharged veteran. Prior to coming to the VA, he had jobs in both the public and private sectors (including one stint as an EEO specialist for the United States Army). Immediately before joining the VA, Cullom worked as a civilian for the Navy, where he was eventually promoted to the GS-11 level. While at the Navy, Cullom was rated "fully successful" at both the GS-9 and GS-11 levels./1

As the district court noted, Cullom has had a "rocky employment history with the VA." Id. at 1091. It hired him in September 1990 as a GS-9 staffing specialist on a temporary appointment (not to exceed one year). Six months into this assignment, his immediate supervisor, a black female, thought Cullom's work was unacceptable and fired him effective March 21, 1991. Cullom filed an EEO complaint (his first), alleging that his supervisor had discriminated against him on the basis of his sex by depriving him of the proper training. The VA settled his complaint in October 1992. Under the settlement, the VA reinstated Cullom as a full-time GS-9 personnel staffing specialist, subject to a six-month probationary period. Significantly, the settlement "set forth written performance standards" for him. Id.

Although Cullom's GS-9 position, even with his probationary status, had the potential for promotion to GS-11, Cullom did not perform well. His immediate supervisor, Dean Lapcewich, was frequently displeased with his work. When Cullom requested a series of training opportunities to assist him in his new position, Lapcewich established a comprehensive training program for Cullom and authorized him to attend training courses. He also assigned Cullom a senior staffing specialist who could mentor him and provide him with on-the-job training. But despite these efforts, Cullom continued to perform poorly at the GS-9 level.

The VA has five ratings for employee performance: (1) outstanding; (2) highly successful; (3) fully successful; (4) minimally successful; and (5) unacceptable. Under the VA's

Merit Promotion Plan (Merit Plan), promotion is not guaranteed. An employee must achieve a rating of at least "fully successful" to be eligible for promotion and must be in his present position for at least one year. But simply being eligible does not make advancement a sure thing. The employee must also demonstrate the ability to perform the duties of the next level./2

Lapcewich wanted to rate Cullom "minimally successful" because he felt his work contained significant and numerous errors, even after his substantial formal and informal training. Because of Cullom's probationary status, a "minimally successful" rating would most likely have resulted in his termination. At a minimum, it would have caused Cullom to be placed in a Performance Improvement Program, or "PIP." This is, in essence, a remedial program for employees who are not performing up to standards (those who receive a performance rating below "fully successful"). It affords sub-par employees the opportunity to improve or develop skills. But this "opportunity" is double-edged. Placement in a PIP also places the employee on probation, subject to termination. At oral argument, the VA pointed out that for many employees it is the last stop before dismissal.

Fearing another EEO complaint if Cullom were to receive the lower rating, Lapcewich's supervisor--who was required to sign off on employee evaluations--rejected Lapcewich's proposed "minimally successful" recommendation. He instead directed Lapcewich to overrate Cullom as "fully successful." Lapcewich rated Cullom accordingly and did not advise him of the "minimally successful" level of performance he was really exhibiting at the GS-9 level. Lapcewich did, however, meet with Cullom to discuss performance standards, although Cullom refused to sign a form indicating that he had received the standards.
The strategy of appeasement, if it can be called a strategy, did not work. In September 1993, Cullom filed a second EEO complaint. He alleged that Lapcewich and other VA managers had retaliated against him for his prior EEO complaint by not promoting him to the level that he had held in the Navy, GS-11. He alleged Lapcewich knew about his Navy background, yet "remained completely driven to make me compete again for the grade I previously had."

In December, while Cullom's second EEO complaint was pending, Lapcewich gave Cullom his mid-year performance review. As before, Lapcewich thought Cullom was not performing at the GS-9 level. But again, aware of Cullom's complaint, higher supervisors directed Lapcewich to overrate him as "fully successful." Lapcewich did so, rather than

place Cullom in a PIP on probationary status, as a lower rating would have required. Again, Lapcewich did not inform Cullom of his true level of performance. But he did tell him that he was making too many mistakes, that his work required too much review, and that he took too long on a relatively minor project.

In April 1994, the VA settled Cullom's second complaint by agreeing to place him in a nine-month, off-site program designed to train "personnel interns" who were usually GS-7s. Placing Cullom in this program was the idea of Cullom's EEO investigator who concluded, after reviewing Cullom's personnel file, that the program would provide Cullom with basic personnel skills (skills Cullom had contended that he did not possess due to inadequate training). The settlement, however, did not mention the possibility of promotion to GS-11.

After the off-site training got underway, Lapcewich evaluated Cullom for the most recent rating period (which had ended shortly before Cullom's departure). He concluded that Cullom still had not been performing at the GS-9 level. Yet, for at least the third time, Lapcewich's superiors rejected his proposed rating of "minimally successful" and directed him to rate Cullom "fully successful." The undisputed motive for overrating Cullom was to placate him so he would not file another EEO complaint.

At the end of the off-site training in February 1995, the training supervisor concluded that Cullom had "successfully completed" the intern program. Although this supervisor thought that Cullom exhibited a poor attitude and that his work was worse than that of his (GS-7) training partner, he nevertheless stated that Cullom would be "an excellent candidate for placement" at a VA facility. In April, Cullom returned to the Hines facility.

In spite of efforts that could generously be described as trying to give Cullom the benefit of the doubt (for example, the VA once again assigned him a mentor), Cullom filed a third EEO complaint. He demanded performance standards and a retroactive GS-11 promotion. When Cullom and the VA were unable to resolve the complaint, Cullom filed this lawsuit, alleging he was denied a GS-11 promotion because of his race and in retaliation for his prior EEO complaints.

While the lawsuit was pending, Cullom continued to work as a GS-9, and his supervisors continued to complain about his performance. His new supervisor, Claire Hajduk, did not believe that Cullom had demonstrated the ability to perform

GS-11 work, as the VA's Merit Plan requires for promotion. In November 1996, Hajduk nevertheless convinced her supervisor to sign off on Cullom's promotion by stating that she believed it might finally "jump-start" him to perform better and because she would then be better able to evaluate whether he was really unable to do GS-11 work. Again, when rating time came around, Hajduk (like Lapcewich before her) did not want to rate Cullom "fully successful." But because her supervisor would not allow a lower rating, Hajduk rated Cullom's performance as "fully successful" at his new grade of GS-11.

Finally, in November 1997, Blanche Phillips, a black female, began supervising Cullom. Cullom continued to perform poorly in several respects, and Phillips received numerous complaints about his work, forcing her to reassign some of his work. She still gave him a rating of "fully successful," even though she knew he was experiencing significant work-related problems. She testified that Cullom continues to experience such problems.

The district court dismissed Cullom's race discrimination claim, and his retaliation claim was tried before a magistrate judge. The VA had no choice but to admit that it did not follow its normal procedures in rating Cullom, and because Cullom had received favorable (although undeserved) ratings, the court concluded that the VA failed to present a non-retaliatory reason for denying him an earlier promotion./3 Of course, its non-retaliatory reason was that he had not demonstrated that he was capable of performing at the next level, but that flew in the face of the series of formal, favorable evaluations he had received. The district court essentially concluded that the VA reacted to Cullom's litigious nature by "retaliating" against him by giving him more than he deserved. As the district court noted, "[b]ut for Plaintiff's complaints to the EEOC, he would have received the correct performance evaluation and would have received the feedback required in order to achieve promotion. Instead, as a result of his activity, he was given false evaluations and was denied a performance improvement plan [PIP] to improve his work performance, thereby denying him the opportunity for promotion." Cullom, 27 F. Supp.2d at 1096. It concluded that the VA "cannot provide an employee with satisfactory evaluations and then deny the same employee a promotion on the theory that the evaluations are false." Id. at 1097.

The usual case of retaliation in violation of Title VII occurs when an employee suffers an adverse job action because he complained about

some form of discrimination. No doubt Cullom filed numerous EEO complaints. And having his promotion to GS-11 delayed can be labeled a material adverse job action. But had VA supervisors not "retaliated" by giving him, an incompetent employee, undeserved favorable treatment and evaluations (and ultimately a promotion to GS-11), he would have likely been demoted, placed on probation, and quite possibly terminated. The question before us, then, is whether it is a violation of Title VII for an employer to in effect delay kicking someone upstairs (with more pay and a higher grade level) instead of kicking him down and possibly out. A close examination of the statute reveals that this undeniably poor policy does not violate the Act.

## II.  Discussion

Subsection 3(a) of 42 U.S.C. sec. 2000e "has been construed to prohibit an employer from pursuing retaliatory measures . . . against an employee for exercising his or her rights under Title VII." Reed v. Shepard, 939 F.2d 484, 492 (7th Cir. 1991)./4 Under the statute, a plaintiff must establish three basic elements by a preponderance of the evidence to prove a claim of retaliation: (1) that he opposed an unlawful employment practice; (2) that he was the object of adverse employment action; and (3) that the adverse employment action was caused by his opposition to the unlawful employment practice. Hamann v. Gates Chevrolet, Inc., 910 F.2d 1417, 1420 (7th Cir. 1990) (citing Klein v. Trustees of Ind. Univ., 766 F.2d 275, 280 (7th Cir. 1985)). In order to prove causation, "the plaintiff must demonstrate that the employer would not have taken the adverse action 'but for' the protected expression." Johnson v. University of Wis.-Eau Claire, 70 F.3d 469, 479 (7th Cir. 1995); see also McNutt v. Board of Trustees of Univ. of Ill., 141 F.3d 706, 709 (7th Cir. 1998) (after 1991 amendments to Civil Rights Act, plaintiff still required to prove "but for" causation to establish claim of retaliation). This is the "ultimate inquiry" in evaluating a Title VII claim. See Heerdink v. Amoco Oil Co., 919 F.2d 1256, 1261 (7th Cir. 1990). But while Title VII prevents employers from punishing their employees for complaining about discrimination, it does not prevent an employer from unjustifiably rewarding an employee to avoid a discrimination claim. See 42 U.S.C. sec. 2000e-3(a).

We review the district court's factual finding for clear error. Fed. R. Civ. P. 52(a). Brenner v. Brown, 36 F.3d 18, 19 (7th Cir. 1994). "Our scrutiny . . . is deferential, but it is not abject." Carr v. Allison Gas Turbine Div.,

General Motors Corp., 32 F.3d 1007, 1008 (7th Cir. 1994). "We must distinguish between a situation in which 'we think that if we had been the trier of fact we would have decided the case differently and the situation in which we are firmly convinced that we would have done so.'" Turgeon v. Premark Intern., Inc., 87 F.3d 218, 221 (7th Cir. 1996) (emphasis in original) (quoting Carr, 32 F.3d at 1008).

For an employee to prove retaliation, he must demonstrate that he has suffered some sort of adverse employment action. Ribando v. United Airlines, Inc., 200 F.3d 507, 510 (7th Cir. 1999). But as we have often said, "not everything that makes an employee unhappy is an actionable adverse action." Id. at 511 (quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)). To be "adverse," the action "must be 'materially' adverse, meaning more than 'a mere inconvenience or an alteration of job responsibilities.'" Id. at 510 (quoting Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)).

Cullom variously complains about three "adverse actions": his receipt of overly generous (and thus inaccurate) performance evaluations, his failure to be placed in a PIP (which would entail probation and remedial training), and the VA's failure to promote him more quickly. The first two can hardly be called "adverse actions." Overrating an employee may be a misguided way of avoiding controversy, but it is not an adverse act, let alone a material one. In fact, when it comes to performance ratings, most retaliation claims involve a supervisor underrating a subordinate for engaging in protected activity. See Adusumilli v. City of Chicago, 164 F.3d 353, 359 (7th Cir. 1998). Even then, we have held that negative job ratings, without more, are not "adverse actions." See Smart, 89 F.3d at 442 ("There is little support for the argument that negative performance evaluations alone can constitute an adverse employment action."); accord Silk v. City of Chicago, 194 F.3d 788, 802-803 (7th Cir. 1999) (listing cases); Gustovich v. AT&T Communications Inc., 972 F.2d 845, 847 (7th Cir. 1992). Given this precedent, it would be strange to label as an "adverse action" evaluations that an employee complains are "too good."

Cullom also claims that his failure to be placed in a PIP was an adverse action. Recall that such a placement must be preceded by an unsatisfactory rating in job performance. True, once demoted to a PIP, an employee would receive some remedial training, and a failure to receive training might be an adverse action. See Pafford v. Herman, 148

F.3d 658, 667 (7th Cir. 1998). But as Cullom acknowledges, a PIP is a remedial program for probationary employees. The next step for employees in PIP could very well be termination, not promotion. The adversity of an employment action is judged objectively, and no reasonable person would call "adverse" an employer's failure to demote him to a remedial program and place him on probation. See Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999); Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1449 (11th Cir. 1998).

On the contrary, most employees would claim that being placed in such a remedial program is an adverse action. See Adusumilli, 164 F.3d at 358–59, 363. And we have suggested that being placed on probation could also be an adverse action. See Smart, 89 F.3d at 442 (while negative evaluations alone did not constitute an adverse action, if plaintiff "had been, as she alleges, put on probation, we might have a different case before us."). Thus, if anything, the VA's overly generous job evaluations saved Cullom from suffering two potentially "adverse actions," demotion and probation. Obviously, there is some flexibility in defining an "adverse act." See Ribando, 200 F.3d at 510. But we are not so flexible that we will bend over backwards and define as adverse a situation where an employer overrates an employee, thus preventing the employee from being placed on probation in a remedial program that frequently leads to termination.

Cullom leans heavily on Vaughn v. Edel, 918 F.2d 517 (5th Cir. 1990), a case of race discrimination where the employer, out of fear of a discrimination claim, overrated the plaintiff (whose performance nevertheless deteriorated, and who was eventually fired). In terms of an "adverse action," however, Vaughn differs in two critical respects and will not support Cullom. First, Ms. Vaughn's employer did not give her any indication, either formally or informally, of her unsatisfactory performance. Id. at 520 (Ms. Vaughn was "not in any way formally criticized or told anything regarding these problems"); id. at 522 ("Had her dissatisfied supervisors simply counseled Vaughn informally, such counseling would inevitably have indicated to Vaughn that her work was deficient."). Second, and as a result, it did not afford her the opportunity to improve her performance. Id. ("Texaco did not afford Vaughn the same opportunity to improve her performance . . . as it did its white employees.").

By contrast, notwithstanding his inflated evaluations, the VA frequently advised Cullom that his work was deficient. See Cullom, 27 F.

Supp.2d at 1091 ("Throughout the course of his supervision of Plaintiff, Lapcewich expressed displeasure with the quality of Plaintiff's work and periodically returned Plaintiff's work with its deficiencies highlighted."). Further, it gave him written performance standards (id.), met with him to discuss these standards (id. at 1092), granted his request for a tailor-made training program (id. at 1091), allowed him to take seminars (id. at 1092), gave him additional, nine-month off-site training (id.), provided him mentors on two occasions (see, e.g., id. at 1094), and closely supervised his work (see, e.g., id.). The VA, then, was not excluding Cullom "from its efforts to improve efficiency" in contravention of Title VII. Contrast Vaughn, 918 F.2d at 523. By affording Cullom particular training and guidance, the VA actually gave him a better chance to improve his performance. This "special treatment" gave Cullom the opportunity to improve his skills without having to bear the stigma and risk the negative consequences (probation and possible termination, respectively) that would have accompanied a PIP.

We now turn to Cullom's remaining claim of an adverse action--the VA's failure to promote him sooner. Of course, because a failure to promote affects the rate of pay and the accrual of leave, denying Cullom an earlier promotion was not only adverse, it was materially adverse. Thus, it qualifies as an "adverse action" for purposes of Title VII (and the VA concedes as much). See Williams v. Pharmacia, Inc., 137 F.3d 944, 948 (7th Cir. 1998). The question is whether the district court clearly erred in finding that Cullom "established a causal link between his protected expression in filing EEO complaints and his failure to be promoted." Cullom, 27 F. Supp.2d at 1095. According to the district court, that link was the VA overrating Cullom as "fully successful": he had already filed several EEO complaints, and VA supervisors hoped to avoid future filings by giving him inflated ratings. Id. at 1096. For two reasons, the district court erroneously concluded that this link showed that Cullom's EEO filings caused him not to be promoted earlier.

First, the district court held that under the Merit Plan Cullom's fully successful performance ratings entitled him to a promotion. Id. Thus, it concluded, the fact that the VA did not promote him earlier must have been because it was retaliating against him for filing EEO complaints. Id. at 1096-1097. This conclusion is clearly erroneous. As the district court earlier found (see n.2 supra), there is no entitlement to promotion based solely on a job rating. Under the Merit Plan, a "fully successful" rating is merely

a threshold requirement; an employee who does not satisfy this minimum criterion is not even eligible for promotion. If he does satisfy it, he then has to have shown that he can perform at the next level.

Promotion to the next higher grade in a career-ladder is not guaranteed and is dependent on the employee meeting all statutory and regulatory requirements (i.e. minimum qualifications, time-in-grade, etc.), the employee's demonstration of the ability to perform the duties of the next higher graded position as determined by the supervisor, and availability of work at the next higher grade. No employee is eligible to receive a career-ladder promotion if the employee has a performance rating of record or special performance rating of record of less than fully successful.

Id. at 1096 (emphasis added) (setting out relevant part of Merit Plan). Clearly, Cullom was not performing up to par when he received his inflated ratings, let alone up to GS-11 standards (the district court even credited the VA's testimony that Cullom has exhibited significant performance problems throughout his tenure). Id. at 1091-1093. Given his performance history, the district court clearly erred in holding that Cullom's formal ratings, by themselves, showed that he was performing at the GS-11 level, that he was thereby entitled to promotion, and thus "but for" his EEO complaints, he would have been promoted sooner. See Adusumilli, 164 F.3d at 363-364 (holding that no rational jury could find causation based on favorable performance evaluations because they are "makeweight evidence" and of "little significance" when there is so "dramatic a discrepancy between evaluation and performance").

  While this error alone is sufficient to reverse, we should address the more perplexing error in this case. In order to find retaliation, the district court had to string together a series of events linking Cullom's EEO filings to the delay in his promotion. The district court attempted to do this, but it misconstrued the last event in the series:

But for Plaintiff's complaints to the EEOC, he would have received the correct performance evaluation and would have received the feedback required in order to achieve promotion. Instead, as a result of his activity, he was given false evaluations and was denied a performance improvement plan [PIP] to improve his work performance, thereby denying him the opportunity for promotion.

Cullom, 27 F. Supp.2d at 1096. Recall, though, that the "adverse action" is not Cullom's failure to be placed on probation in a PIP (for missing out on this particular "opportunity for promotion" under these circumstances does not qualify as an adverse action); instead it is Cullom's failure, in fact, to be promoted earlier. The district court's causation analysis thus should have continued further.

The proper chain is as follows: had it not been for Cullom's prior EEO activity, he would have received accurate (lower) evaluations and been placed in a PIP, and if he had been placed on probation in such a program, he would have successfully completed it and developed the skills necessary to perform at the (next) GS-11 level. It is the last part of this chain that is the weak link. Nothing in the record shows that had Cullom been placed in a PIP, he would have successfully completed it. The evidence, if anything, indicates just the opposite: Cullom did not even positively distinguish himself in performing GS-7 duties at the off-site intern training program and, for over four years, had considerable difficulty performing GS-9 duties, despite the substantial formal and informal guidance and training he had received. Because there is not substantial evidence that Cullom would have successfully completed a PIP, he did not establish that had he been placed on probation in this program, he would have, after a most circuitous route, been promoted earlier. See Willis v. Marion County Auditor's Office, 118 F.3d 542, 547 (7th Cir. 1997) (plaintiff failed to produce evidence to establish causation).

Moreover, even if the record somehow showed that Cullom would have successfully completed a remedial PIP, that would have at best rehabilitated Cullom's GS-9 skills. There was certainly no assurance, and likely little probability, that this more elementary training would have caused him to develop GS-11 skills. Thus the district court incorrectly had to presume that by being placed in a GS-9 PIP, Cullom would have developed GS-11 skills. This also was clear error. As to causation, then, the evidence gives no indication that had Cullom been rated accurately (as performing unsatisfactorily), he would have likely been promoted sooner. Cullom thus has not proven retaliatory discrimination under Title VII.

III. Conclusion

The district court concluded that the VA overrated Cullom out of concern that if it gave him the lower rating he deserved, he would, in effect, "retaliate" against it by filing another

EEO complaint. Cullom, 27 F. Supp.2d at 1097 ("one can say that Plaintiff may have used the EEO complaint system as an offensive weapon and a threat"). As a policy matter, the VA's behavior is indefensible. It certainly would have been better if the VA had had the fortitude to rate Cullom accurately (although in doing so it would have probably been risking another EEO complaint). But Title VII liability does not turn on ill-advised personnel decisions. Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988). And while honesty may be, as the district court put it, "the best policy," it is not for a federal court to say that for job evaluations it is "the required policy." Cullom, 27 F. Supp.2d at 1090 (emphasis added). See Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1398 (7th Cir. 1997) (performance evaluations "serve a variety of purposes, only one of which is objective evaluation. They are also morale-builders and motivators."). Thus overrating Cullom so he would not be placed on probation, while giving him substantial training and oversight, was not "retaliatory" discrimination under Title VII.

For the foregoing reasons, the judgment of the district court is REVERSED and this case is REMANDED for the district court to enter judgment in favor of the defendant.

/1 "GS" refers to the "government scale" pay levels "for VA employees paid on salary instead of a per hour basis." Hughes v. Derwinski, 967 F.2d 1168, 1170 n.1 (7th Cir. 1992).

/2 The district court found that "[t]ypically, an employee can be promoted to the next level after fully successfully performing at the previous level for the prescribed time period. For instance, although not automatic, a GS-9 can be promoted to GS-11 following a one-year period of fully successful performance as a GS-9. In addition to spending a year at the previous grade, an employee must also demonstrate the ability to perform the duties of the next highest grade." Id. at 1096 (emphasis added).

/3 An employee can establish his employer's intent to retaliate either directly or indirectly (the latter way by using the McDonnell Douglas burden-shifting method). Miranda v. Wisconsin Power & Light Co., 91 F.3d 1011, 1015 (7th Cir. 1996). Cullom proceeded under the McDonnell Douglas framework. After trial, the various presumptions and burdens of the framework fall out, and the fact-finder is left with determining whether the plaintiff has established the ultimate issue of

intentional retaliation. United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-716 (1983); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-511 (1993). The district court here erred in sticking with McDonnell Douglas after trial, but its findings are clear, and Cullom was able to present his case; thus, we can review whether he established the ultimate issue. Contrast Aikens, 406 U.S. at 717 (case had to be remanded due to district court's requirement that plaintiff use only direct evidence to prove discriminatory intent).

/4 "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. sec. 2000e-3(a).