**Marlon J. POWELL, Plaintiff–
Appellant,**

v.

**Donald H. RUMSFELD, Defendant–
Appellee.**

No. 01–4233.

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 2002.

Decided July 24, 2002.

Before COFFEY, RIPPLE, and KANNE, Circuit Judges.

### ORDER

Marlon Powell, a male employee of the United States Department of Defense (DOD), brought suit under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, claiming sex discrimination and retaliation.

The district court granted summary judgment for the DOD, and Powell appeals. We affirm.

In 1993 Powell, a DOD employee since 1980, began working as a Procurement Technician in the DOD's Small Business Office located at O'Hare International Airport. His direct supervisor was a male by the name of Gregory Wynne. Powell's duties included sending written correspondence to contractors and government officials.

According to Powell, he and Wynne initially had a good working relationship. This was reflected in Powell's performance reviews: Wynne gave Powell a "Fully Successful" rating for the period of July 3, 1994, to March 31, 1995, and a "Highly Successful" rating for the period of April 1, 1995, to March 31, 1996. For the period of April 1, 1996, to December 31, 1996, Powell was not given a performance rating, but he did receive two performance awards.

According to the DOD, however, Wynne "at some point" began to find problems with the correspondence that Powell was sending to contractors and government officials. For instance Wynne noticed that Powell was sending out materials without cover letters, which was a violation of office procedure. Wynne alleged in an affidavit that he also found misspellings and incomplete sentences in some of Powell's letters. As a result of these findings, Wynne counseled Powell in April 1997. But though Wynne alleged that he talked to Powell both about his writing skills and his failure to use cover letters, Powell says that Wynne addressed only the cover-letter issue. Wynne noted the reprimand in Powell's employment file.

In October 1997 the DOD announced an opening for a "Procurement Analyst" in the Small Business Office. The job qualifications, according to the announcement,

included "skill in oral and written communications."

Powell was one of several people who applied for the position. Pursuant to the DOD's normal promotion procedure, a staffing specialist was assigned to screen the applications for "generally qualified" applicants. Powell was among seven deemed "generally qualified." Those seven names were then sent to Wynne, who was responsible for making the ultimate selection. Before Wynne made his decision, he interviewed all seven candidates, asking each the same questions. Powell admitted during a deposition that he felt the questions were "fair."

Wynne selected a male applicant, Sylvester Herring, as his first choice for the position, and a female, Micole Stephens, as his second choice. After Herring turned down the job, Wynne hired Stephens, who had worked for the DOD since 1988. Wynne alleged that he selected Stephens as his second choice because she "was the next best qualified candidate ... because of her ability and experience to communicate orally and in writing." In Wynne's opinion Stephens "provided better examples of her ability to communicate in writing than the other candidates. Moreover, Ms. Stephens articulated very well the KSAs [knowledge, skills, and abilities] necessary to perform the duties for the position." Wynne also thought that Stephens's "experience as a Telecommunications Supervisor ... was an asset because she worked independently[,] which indicates her ability to successfully perform the duties required."

Wynne decided against making Powell his second choice because of his "inability to communicate effectively in writing." Wynne recalled that "Powell ha[d] sent several correspondences ... with incomplete sentences and misspelled words," and that Wynne had been forced to instruct Powell not to send any correspondence without Wynne's prior review. Wynne also found it significant that Stephens had been exposed to higher-level management during her career while Powell had not.

On February 18, 1998, Powell filed an informal complaint with an Equal Employment Opportunity (EEO) counselor, claiming that he had not been hired for the Procurement Analyst job because of his gender. On June 2 Powell filed another informal EEO complaint, alleging that Wynne retaliated against him for the first complaint by giving him a "Minimally Acceptable" performance rating for the year 1997. Though Wynne signed that evaluation on February 17, 1998, Powell says that he did not receive it until March 2.

■ In this appeal Powell first argues that summary judgment was inappropriate because there remained disputed issues of fact concerning whether he was discriminated against because of his gender. A plaintiff may prove gender discrimination with either direct or circumstantial evidence, *Hoffman–Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 650 (7th Cir.2001), and here, Powell attempted to do both. As purportedly direct evidence of discrimination, he offered affidavits from two of his former coworkers—Stan Laber and Patricia Nelson. Laber states that from 1991 to 1994 Wynne had "readily and regularly claimed to be enthralled with women and preferred to be with, around, working for, and employing women. Given a choice of hiring a male or a female [Wynne] told me he would always hire a female unless he found her looks to be repulsive." Nelson attests that "[w]omen seemed to have it easier than males working under Mr. Wynne's supervision. When Mr. Powell would take breaks, Mr. Wynne would say something to him about the time he stayed on break. But when women would take breaks longer than the

scheduled time, Mr. Wynne would say nothing." Powell also offered his own deposition testimony that Wynne "openly stated on several occasions that he preferred working with women .... Mr. Wynne systematically wanted me to bring aboard a female employee at the GS 11 level in an underhanded fashion, because he didn't want to hire a Mr. Marston Guese."

Powell contends that the above statements are direct evidence of discrimination because they "establish[ ] that Gregory Wynne, the person who made the promotion decision, was biased in favor of women." We disagree. Allegedly discriminatory comments qualify as direct evidence only if they are related to, and contemporaneous with, the adverse employment decision at issue. *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 611 (7th Cir. 2001). Here, Wynne's remarks were made years before the adverse decision and/or were not related at all to that decision; they cannot therefore be fairly characterized as direct evidence of discrimination. *See Markel v. Bd. of Regents of the Univ. of Wis.*, 276 F.3d 906, 910 (7th Cir.2002) (discriminatory statements made two months before adverse employment action did not show direct discrimination); *Oest*, 240 F.3d at 612 (comments made two years prior to employment decision in question could not be considered direct evidence of discrimination).

Because he has no direct evidence, Powell was required to prove his claim via the burden-shifting method of *McDonnell Douglas*, under which a plaintiff must first establish a *prima facie* case of discrimination. *Hoffman–Dombrowski*, 254 F.3d at 650. If the plaintiff succeeds, the burden shifts to the defendant to put forth a legitimate, nondiscriminatory reason for the challenged action. *Id.* If this burden is met, the burden shifts back to the plaintiff to show that the articulated reason is pretextual. *Id.*

Though we seriously doubt whether Powell established the elements of a *prima facie* case, the DOD conceded at oral argument that he had. We therefore skip to the question of pretext. The DOD explained that it promoted Stephens rather than Powell for the following reasons: (1) Stephens, unlike Powell, already had experience in a supervisory position; (2) Stephens, unlike Powell, had demonstrated her ability to work independently without close supervision; (3) Stephens had "exemplary" communication skills; and (4) Powell had "ongoing problems with basic proficiency," as evidenced, for instance, by the "incomplete sentences and misspelled words" in his letters. The district court focused its attention on this last proffered explanation and concluded that the record supported the inference that it was a pretext for discrimination. Nonetheless, the court decided to grant the DOD's motion because it found that Powell failed to "produce some evidence that discrimination was the real reason for Wynne's decision." This analysis, however, is inconsistent with *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), which holds that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Thus, in summary-judgment proceedings it is error for courts to proceed "from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." *Id.* at 149, 120 S.Ct. 2097; *see Blow v. City of San Antonio, Tex.*, 236 F.3d 293, 297–98 (5th Cir.2001).

But despite the district court's error regarding Powell's evidentiary burden, summary judgment was still proper be-

cause Powell failed to show that *all* of the DOD's proffered reasons were pretext for discrimination. *See Ghosh v. Ind. Dep't of Envtl. Mgmt.*, 192 F.3d 1087, 1091–92 (7th Cir.1999); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 459 (7th Cir.1999). Even assuming that Powell succeeded in showing the last reason to be pretextual (a dubious assumption since Powell conceded that he was reprimanded for failing to use cover letters), he did not dispute the remaining three. In fact Powell admitted in his Local Rule 56.1 Statement that he lacks first-hand knowledge about Stephens's interview; that he knows nothing about her qualifications; that he does not know her personally and at most has heard about her from one of her former coworkers; and that he never talked to Stephens about any of the work she had done prior to her interview for the position. Granted, we have recognized that there may be cases where the multiple reasons offered by the defendant "are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment" by showing the pretextual nature of just one reason. *Russell v. Acme–Evans Co.*, 51 F.3d 64, 70 (7th Cir.1995). Powell, however, does not contend that that exception applies here. Accordingly, his failure to dispute all of the DOD's proffered explanations defeats his discrimination claim. *See Ghosh*, 192 F.3d at 1092 (finding plaintiff's failure to address one of the employer's proffered nondiscriminatory reasons to be fatal to his claim of discrimination).

■ We turn next to Powell's retaliation claims. Powell contends that Wynne gave him a poor performance review for the year 1997 in retaliation for his filing an informal EEO complaint on February 18, 1998. But to establish a *prima facie* case of retaliation, a plaintiff must show that he suffered a material adverse change in his

employment, and a negative performance evaluation by itself does not qualify. *Cullom v. Brown*, 209 F.3d 1035, 1041 (7th Cir.2000); *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir.1996). Here, Powell admitted that an occasional bonus was the only benefit that might result from a performance rating, and that, even if he had received a positive rating, whether he was then awarded a bonus would still depend entirely on budgetary concerns and his supervisor's discretion. The potential of losing an already discretionary bonus does not, however, constitute a material adverse change under our caselaw. *Rabinovitz v. Pena*, 89 F.3d 482, 488–89 (7th Cir.1996) (no adverse action where lower performance rating prevented employee from receiving a discretionary bonus, but did not alter employee's responsibilities or salary).

■ Furthermore, even if the negative performance evaluation qualifies as an adverse action, Powell's retaliation claim would still fail because he lacked evidence of causation. *See Smart*, 89 F.3d at 440. There is no dispute that Wynne prepared the evaluation on February 17, 1998—one day *before* Powell filed his informal EEO complaint. For some reason Powell seems to think that March 2, 1998—the day he received the evaluation—is the significant date. The implication perhaps is that Wynne lied about when he finished the review, but that would be inconsistent with Powell's own admission during his deposition that he has no reason to think that Wynne put a false date on the review form.

Finally, Powell contends that Wynne engaged in retaliation by physically assaulting him and by refusing to grant him a previously-approved transfer to a nearby facility. These arguments are waived, however, because Powell failed to develop them in his appeal brief. *Kelly v. U.S.*

*Envtl. Prot. Agency,* 203 F.3d 519, 522 (7th Cir.2000).

AFFIRMED.