In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1876

MATTHEW WHITFIELD,

*Plaintiff-Appellant,*

*v.*

INTERNATIONAL TRUCK AND ENGINE CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:02-cv-00902-RLY-TAB — **Richard L. Young**, *Chief Judge.*

ARGUED NOVEMBER 14, 2013 — DECIDED JUNE 6, 2014

Before WOOD, *Chief Judge*, and CUDAHY and ROVNER, *Circuit Judges*.

CUDAHY, *Circuit Judge*. This rather complex matter involves a failure to hire claim under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act. At the heart of this case is plaintiff-appellant Matthew Whitfield's application for an electrician position at one of defendant-appellee Navistar's engine manufacturing plants. Whitfield is African-American, and prior to applying with Navistar, he worked as an electrician

for various employers, including four years with the U.S. Navy. Navistar is a manufacturer of engines, among other equipment, and employed a number of electricians at the time of Whitfield's application.

In 1996, Whitfield applied for an open electrician position at Navistar's plant in Indianapolis, Indiana (the Plant). At the time, Navistar had a significant need for electricians and hired sixteen electricians at the Plant while Whitfield's application was pending, and eleven during the relevant limitations period. The written job description for electricians, as negotiated with the United Automobile, Aerospace, and Agricultural Implement Workers of America (the Union) required that an applicant have either eight years experience as an electrician *or* a journeyman card, which was considered presumptive proof of the experience requirement. The journeyman card could be issued by the Union or any other union with comparable apprenticeship standards. Navistar delegated the responsibility of evaluating and confirming an applicant's experience to the Union.

When Whitfield first applied for a job in 1996 he alleged he had approximately nine and a half years of experience as an electrician, including four years in the U.S. Navy. The Plant's general foreman, Daniel McDonald, interviewed Whitfield and stated he would hire him if the Union verified the required eight years of experience. However, when the Union attempted to verify Whitfield's numerous employers it was unable to determine he had the requisite eight years experience. Navistar asserted the difficulty in verifying Whitfield's experience was due to errors on his application, but the Union did not consider Whitfield's four years of experience as an electrician in the Navy, which it conceded

should have been considered. Whitfield was never rejected by Navistar; instead he was told that the Union could not verify his experience. At the suggestion of Navistar's electrical foreman, Willie Jones, Whitfield continued to work elsewhere as an electrician and to supplement his Navistar application with additional references.

In September 1998, Whitfield obtained his International Brotherhood of Electrical Workers (IBEW) card, and submitted proof of it to Navistar. At this point there is no doubt that Whitfield met the minimum requirements for hire. Union Committeeman George Bunton then cleared Whitfield for hire, and returned Whitfield's file to Jones. While returning the file to Navistar with notice of Whitfield's clearance, Jones opened Whitfield's folder and saw that the word "black" was written on the application's cover sheet. Surprised, Jones asked Navistar's Human Resources manager, Jeff Thatcher, why the word appeared on the file. Thatcher could not explain why the cover sheet was there and said it must have been a mistake.

Whitfield continued his quest to gain employment at Navistar. In March 1999, Whitfield gave the Union an updated copy of his IBEW card and an updated application. While Whitfield's resubmitted application was pending, Navistar hired at least five more white electricians. Whitfield was never formally rejected but in December 1999 Jones unofficially told Whitfield that although he wished to hire Whitfield, Navistar would not allow it. At trial Navistar asserted various reasons for not hiring Whitfield, including the "errors" in his resume and his purported lack of Programmable Logic Controller (PLC) experience, which Navistar contended was an important, but unstated, qualification for the elec-

tricians they hire. No final decision maker has ever been identified by Navistar.

In October 2001 Whitfield, along with 26 other Plaintiffs, sued Navistar under Title VII, alleging Navistar discriminated in hiring and maintained a racially hostile work environment in the Plant. The district court certified the other Plaintiffs' hostile work environment class and ordered that Whitfield's hiring discrimination claim remain part of the underlying case for discovery and all other pretrial proceedings, but separated his claim from that class action for trial. The hostile work environment class action went to trial in 2006 but was settled with most of the class action members before conclusion of trial.

During joint discovery for the class action and Whitfield's claim, extensive amounts of evidence and testimony showing extreme racial hostility at the Plant were presented. Evidence showing racial hostility at the Plant included symbols of racial hatred (including nooses), photos of racially hostile graffiti and racially offensive slogans scrawled around the Plant. The evidence also showed that Navistar refused to discipline white employees, including supervisors, for such racially charged behavior. There was also evidence that the Plant systematically excluded blacks from the skilled trades.

Whitfield's claim finally proceeded to a bench trial in June 2012. After the first day, Whitfield filed a submission regarding evidence from the earlier class trial, *Allen, et al. v. International Trucking*, in an attempt to introduce 59 exhibits and testimony from 19 trial exhibits. Navistar objected, and the district court took the issue under advisement, and the trial proceeded until completion. On July 31, 2013, the court issued its findings of fact and conclusions of law as well as

an entry of final judgment. The court rejected Whitfield's
submission regarding evidence from the class trial, stating
that Whitfield gave the court no authority to support admis-
sion of evidence from the class action. Further, the court
found that Whitfield's submission, proffered one day into
trial, was untimely. The court then concluded that Whit-
field's evidence was insufficient to directly or indirectly
prove discrimination. Specifically, the court determined that
Whitfield's evidence did not imply any discrimination, that
Whitfield did not meet Navistar's unstated qualifications for
the job, and that he did not offer any compelling comparator
evidence. Because we find the district court made several er-
rors in analyzing Whitfield's evidence, we now reverse.

## I.

Under Title VII, employers may not "discriminate against
any individual with respect to his … privileges of employ-
ment, because of such individual's race[.]" 42 U.S.C. § 2000e-
2(a)(1). Title VII claims and 42 U.S.C. § 1981 claims incorpo-
rate the same liability standard. *Walker v. Abbott Laboratories*,
340 F.3d 471, 474 (7th Cir. 2003). Once Whitfield shows he
was subjected to an adverse employment action, here Navis-
tar's failure to hire him, he can prevail on his discrimination
claim by submitting direct or indirect evidence of discrimi-
nation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792
(1973). Under the relevant statutes of limitations, only Whit-
field's claims from May 16, 1998 and onward are timely.

*Direct Method*

We begin with the direct method of proof. In analyzing
Whitfield's evidence, the district court makes two significant
errors, which ultimately doomed its analysis. The court first

erred by discrediting evidence of Whitfield's personnel file containing a cover page with the word "black" on it. Despite our skepticism concerning the district court's negative credibility assessment[1] of Jones' testimony, we do give the court deference in its credibility determinations. *See E.C. Styberg Eng'g Co. v. Eaton Corp.*, 492 F.3d 912, 917 (7th Cir. 2007). However, the court did not have discretion to create an explanation out of thin air as to why the word "black" was on the file, nor should it have ignored substantial evidence of a racially hostile environment.

Despite being called the "direct method" of proof, outright admissions of discriminatory intent are rare, so plaintiffs usually use circumstantial evidence of discrimination to support their claims. *Phelan*, 463 F.3d at 779. A plaintiff may prevail by "constructing a convincing mosaic of circumstantial evidence that allows a [factfinder] to infer intentional discrimination by the decisionmaker." *Id*. For this mosaic to be convincing, it must directly point to a discriminatory reason for the employer's action and also be directly related to the employment decision. *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1071 (7th Cir. 2012). It will not do for plaintiff to assemble an "amorphous litany of complaints about a myriad of workplace decisions." *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). But, "[r]emarks and other evidence that reflect a propensity by the decisionmaker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops

---

[1] The district court determined Jones was not credible on the basis of two minor facts: (1) he could not remember how the cover sheet containing the word "black" was affixed to Whitfield's personnel file; and (2) he could not remember the *exact* date Whitfield's IBEW card was issued.

short of a virtual admission of illegality." *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999), quoting *Venters v. City of Delphi*, 123 F.3d 956, 973 (7th Cir. 1997) (quotations omitted from original). Whitfield attempted to create this mosaic with evidence of his racially coded personnel file, and by drawing a link between that file, the Plant's racially hostile environment and Navistar's refusal to hire him.

The district court, despite having no evidence from Navistar for support, concluded that Whitfield's file could have had "black" written on it for affirmative action purposes, reasoning that Whitefield's file indicated his race to allow Navistar to comply with its affirmative action program. But Navistar's own human resources manager, Jeff Thatcher, admitted that he did not know of *any* reason why "black" was written on Whitfield's file and that it must have been a mistake. Navistar did have an affirmative action program, but it did not collect race information by labeling applicants' files with their race. Moreover, Navistar's diversity manager Roy Civils testified that it would not be proper for information regarding a candidate's race to be sent to the Union for the candidate evaluation process. It is incongruous that someone would have labeled Whitfield's file "black" for affirmative action or other legitimate purposes when the HR manager himself, who would be in the best position to know of any non-discriminatory explanation for the cover sheet, could not explain why it was on the file. Thus, the district court's account of the evidence regarding its alternative explanation for the "black" cover sheet is neither plausible in light of the entire record nor a permissible view of the evidence. *Anderson*, 470 U.S. at 574.

Even more troubling is the district court's determination that there is no evidentiary link between the cover page and an intent to discriminate. First, this strikes us as evidence of racial coding, which strongly infers discrimination. *See e.g., Calloway v. Westinghouse Elec. Corp*, 642 F. Supp. 663, 687 (M.D. Ga. 1986). Second, the district court apparently ignored rather extensive evidence of the racially hostile environment within which this cover page was attached to Whitfield's personnel file. We will address this issue further later on, but for now it is important to note that the district court rejected Whitfield's attempt to admit evidence from the class action—evidence which painted an exceptionally clear, and rather shocking, picture of the Plant's racially hostile work environment. In determining that such evidence was inadmissible, the court said that there was plenty of other evidence establishing the Plant's racially hostile work environment. Inexplicably, the district court makes no mention of this other contextual evidence in its conclusion that *no* evidence links Whitfield's "black" cover page with any discriminatory intent. This is troubling. It is obvious to us that this contextual evidence is at least relevant, and the court's failure to even mention this context in its conclusions regarding the cover page is clear error.

The district court committed a second, more egregious, error by giving enormous weight to the fact that Navistar hired Donna Jackson, an African-American electrician, around the time of Whitfield's pending application. In doing so, the district court again shut its eyes to the entire record, choosing an implausible view of the evidence, and, at the same time, misapplied the law.

Jackson had at least thirteen years of experience at the time she applied. Notwithstanding her clear experience, eleven white electricians were hired before Jackson was finally hired two years after her initial application. She was the first black electrician Navistar had hired in decades. While the district court does have some degree of discretion in weighing evidence, it clearly exceeded that discretion when it determined that Jackson's hiring "negat[ed] any inference that Navistar failed to hire Whitfield due to his race."

By giving such substantial weight to the Jackson hire, the district court apparently forgot that while she was employed at Navistar, she was subject to a severely hostile environment at the Plant, which was primarily directed at her race. In fact, Jackson's story of waiting two years, despite being more qualified than white applicants that were hired instead of her, as well as the racial hostility she was subjected to when she was finally hired, bolster Whitfield's direct discrimination evidence. It is a rather persuasive piece of circumstantial evidence, which the district court erroneously relied upon to negate discrimination rather than to support it. Moreover, this singular instance of Navistar hiring a black electrician, does not entitle Navistar to immunity from subsequent discrimination allegations. *Cf. Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158–59 (7th Cir. 1996). Instead, the court should have recognized that even though a member of the same protected class was hired, that fact does not magically negate the inference created by the evidence of Jackson's hiring and employment at the Plant, the evidence of intense racial hostility at the Plant or the cover page on Whitfield's personnel file identifying him as black. We find

that these clear errors led the district court to improperly distort Whitfield's mosaic of circumstantial evidence.

*Indirect Method*

We now turn to the indirect or burden-shifting method of proving discrimination. Under this method, Whitfield must establish a *prima facie* case consisting of four elements: (1) he was a member of a protected class; (2) he applied for an open position for which he was qualified; (3) he did not receive the position; and (4) those who were hired were not in the protected class and had similar or lesser qualifications. *See Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

There is no real issue as to the first and third elements—it is undisputed that Whitfield is a member of a protected class and did not receive the position he applied for. The district court concluded that Whitfield failed to prove the other elements.

In addressing the second element, the district court first determined that Whitfield applied in 1996, was rejected, and applied again in 1999. Because his 1996 application was before May 16, 1998, the court determined that any claim regarding his 1996 application was untimely, which effectively meant that the court considered only Navistar's conduct after Whitfield's re-application in March 1999. Oddly, the court also concluded that Whitfield had submitted an updated resume in 1997, and even in 1998 the Union was still trying to verify his experience. Instead of supporting a formal rejection of Whitfield's application, the record shows that Whitfield was informed that his application was still under consideration and that Whitfield continued to supplement his

application well into 1998. The record does not support the district court's determination that Whitfield was rejected after his first application. All conduct within the statutory period should be considered by the court. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–115 (2002). Thus, in light of Whitfield's pending application in May 1998, we see no reason why the court should neglect to consider Navistar's timely conduct that took place before Whitfield's re-application in 1999. In any event, even if we were to limit our analysis to the 1999 application, Whitfield can still satisfy each element of the indirect method.

More central to our analysis of the second element of the indirect method is the question of Whitfield's qualifications. Navistar required that an electrician applicant have either eight years of experience as an electrician or a journeyman's card. Whitfield contends that he had eight years of experience at the time of his initial application, and certainly had that many as he continued to supplement his application with his current work experience. Yet, for some reason the Union had trouble verifying his experience. In any case, at the time of his reapplication in 1999 Whitfield had obtained an IBEW Journeyman's card, making him presumptively qualified for the position.[2] Standing alone, this should have been enough to satisfy this element. However, instead of relying on this presumptive evidence, the district court focused on Navistar's justifications for not hiring Whitfield, namely that Whitfield lacked Navistar's "preferred," but never formally stated, qualifications. The district court de-

---

[2] In fact, the record shows and the district court made a factual finding that Union Committeeman Bunton cleared Whitfield for hiring in September 1998 on the basis of both his IBEW Journeyman card and his actual experience.

termined that Whitfield was not qualified for this job, and Navistar was justified in not hiring him, due to errors in his resume and his purported lack of experience with programmable logic controllers (PLC).

Whatever the reasons the district court relies upon to justify Navistar's failure to hire, it does so in error because no decision maker has been identified. Navistar was never able to identify the individual who made the final decision to not hire Whitfield. Thus, it is *impossible* for the court to conclude that the reason he was not hired was due to either the errors in his resume or lack of PLC experience. While those *may* have been reasons for not hiring Whitfield, without any known decisionmaker, it is mere speculation to say these were the *actual* reasons. The district court stated that "it was ultimately Powell's opinion regarding Whitfield's lack of PLC experience that was the driving force behind Navistar's decision not to hire Whitfield." However, Powell testified that he did not make the decision to not hire Whitfield, and could not even identify who made the decision. Therefore, it is patently incorrect to say that Powell's opinion had any bearing on the actual basis for the hiring decision.

Making matters worse, the evidence shows that Whitfield had more PLC experience than many of the white electricians hired during the relevant time period. It is rather odd then that the district court would rely so heavily on Navistar's desire for electricians with PLC experience when the record shows that several new hires had none. Navistar's purported justification seemingly does more to show pretext, than it does to show Whitfield was not actually qualified. *See, e.g.*, *O'Neal v. City of New Albany*, 293 F.3d 998, 1005–06 (7th Cir. 2002)("[plaintiffs] may establish pretext

with evidence that the defendants were more likely than not motivated by a discriminatory reason or that their explanations are not worthy of credence, i.e., they are factually baseless, did not actually motivate the defendants, or were insufficient to motivate the adverse employment action.").

The same can be said for the district court's fixation on the errors in Whitfield's resume. These errors may indicate why Whitfield's resume could not be initially verified; however, it is undisputed that by the time of Whitfield's reapplication in March 1999, he had a journeyman's card—presumptive proof of his qualification, which should render any errors irrelevant. In any event, without a final decision maker it is impossible to say that either PLC experience or resume errors were the sole bases for not hiring Whitfield. This district court's reliance on these speculative justifications was clearly erroneous.

Turning now to the fourth element, the district court also erred in determining that Whitfield failed to present any comparator evidence showing that he was at least as well qualified as non-protected class employees who were hired during the relevant period. In fact, Whitfield submitted rather compelling comparator evidence—a chart, originally prepared by Navistar, which detailed the experience of both Whitfield and Navistar's electricians who were hired while Whitfield's application was pending. As originally prepared, the chart shows that Navistar hired at least one electrician with zero PLC experience during the limitations period. However, Whitfield alleged that the chart's original form drastically understated[3] his experience and submitted an

---

[3] The evidence shows that Navistar General Foreman McDonald prepared the EEOC chart using company files for the electricians that Navistar hired, but only

updated version of the EEOC chart, which reflected his actual experience. This updated EEOC chart showed that Whitfield was more qualified than most of the electricians hired during the limitations period.

Despite this clear comparator evidence, the district court disregarded it on the basis that the chart reflected the training some of Navistar's electricians received after being hired. Inexplicably, both the district court and Navistar seem to argue that the document does not reflect the experience of the electricians at the time they were hired, so it is irrelevant to Whitfield as an un-hired electrician. Apparently Navistar and the court did not understand that the chart reflects the *total* experience of Navistar's electricians, thus showing that Whitfield was more qualified than several employees *even after they received on-the-job training.* The updated EEOC chart is clear and persuasive evidence that Whitfield was more qualified than many of the white electricians Navistar hired during the limitations period—the district court committed clear error in determining that Whitfield had failed to submit *any* comparator evidence regarding Navistar's preferred qualifications.

## II.

Finally we must address the propriety of the district court's exclusion of the evidence which was produced as a result of joint discovery with the class action involving Navistar. The court excluded most of this evidence on the basis that it found no legal support for a blanket admission of exhibit and testimony from a previous trial; that the sub-

---

used his own recollection to fill out the chart as it pertained to Whitfield's experience.

mission was untimely; and that the evidence was either duplicative or irrelevant. We ultimately find that it was within the district court's discretion to disallow the late submission of evidence.

*Timeliness*

Judges have wide discretion to make evidentiary rulings and manage the efficiency of a trial. *See, e.g., U.S. v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012). While we think the district court was permitted to consider this evidence[4], no precedent suggests it was obligated to. The record shows Whitfield's counsel believed the evidence was already admitted and did not want to waste the time and resources by resubmitting this evidence. However reasonable this assumption was, they had no legal authority supporting this assumption. Even when the district court specifically asked for this authority, they could give none. It was a risk, then, to assume that this evidence was admitted without addressing this issue with the district court before the trial began. In this regard, the district court was within its discretion to refuse to admit this evidence for its form (a blanket admission of voluminous exhibits and testimony) and its timeliness (after trial had begun). Therefore to the extent that the district court exercised its authority to control the trial by excluding

---

[4] In *Walker v. Loop Fish & Oyster Co.* the Fifth Circuit determined that where a case is separated and the same judge presided over both the jury and bench trial, the judge had the discretion to consider the evidence from the jury trial in the bench trial. 211 F.2d 777, 780–781 (5th Cir. 1954). Given the overlap in the two proceedings at hand—joint discovery, same case number and same defendants—we think that the Fifth Circuit's holding is applicable to this case—a court has discretion to consider evidence from the earlier trial if it does not result in prejudice.

the blanket admission, we are reluctant to disturb that discretion.

*Relevance*

The district court did not rely solely on the untimely nature of the evidence, but suggested it was not relevant or duplicative as well. Although we grant substantial deference to the district court's determinations regarding relevance, the class action evidence Whitfield sought to have admitted proved racial hostility was rampant at Navistar during the time of his applications, which is quite relevant to this case. Navistar argues that the evidence was duplicative and Whitfield did not meet his burden to show it would change the outcome of his claim. The evidence very well could have changed the outcome of the case. As discussed above, the district court's failure to consider the circumstantial evidence of rampant discrimination at the Plant affected the outcome of Whitfield's case. Thus, there is a strong indication that this evidence is relevant. To the extent that the district court relied on reasons of irrelevance in refusing to admit this evidence, it was an abuse of discretion.

*Exhibit 6*

Finally, we note that the district court inconsistently treated the admissibility of this evidence. On the first day of trial, Whitfield's counsel referred to Exhibit 6, an exhibit from the class trial. Navistar objected on the basis that Exhibit 6 was not evidence in this trial. The court acknowledged that Exhibit 6 *was already part of the record* and overruled Navistar's objection. During the discussion of this objection, Whitfield's counsel contended that the evidence obtained from joint discovery and admitted in the class trial

was already admitted in this trial. Thus, it seems that by recognizing that Exhibit 6 was already part of the record, the court at least implicitly agreed with Whitfield's argument. Obviously, the court changed its mind regarding the class evidence at some point between the time it recognized Exhibit 6 as already admitted and refusing to admit the rest of the class evidence. On remand, the district court should resolve its inconsistent treatment of Exhibit 6 and the rest of the class action evidence.

AFFIRMED in part, REVERSED in part,

and REMANDED.