DAVID E. JONES, United States Magistrate Judge
On two occasions, Scion Dental, Inc., declined to hire Nartisha Leija, who was working for the company on assignment through a temp agency, for permanent employment. Ms. Leija believed that she had been bypassed because she is African American, so she filed a charge of racial discrimination against Scion with United States Equal Employment Opportunity Commission. Less than a week later, Scion terminated Ms. Leija's temporary assignment. The EEOC investigated Ms. Leija's *759 complaint, determined that it had merit, and filed suit alleging that Scion violated Title VII of the Civil Rights Act of 1964 when it failed to hire Ms. Leija for permanent employment.
Scion has moved for summary judgment on all of the EEOC's claims. The EEOC opposes the motion. Because the EEOC has presented sufficient evidence from which a reasonable factfinder could conclude that Scion refused to hire Ms. Leija because she is African American, the Court will deny Scion's motion for summary judgment.
I. Factual Background
Scion is a privately owned company engaged in administering benefits provided to dental patients participating in Medicaid. Defendant's Statement of Proposed Material Facts ¶¶ 8-9, ECF No. 40. In early 2014, Scion's owner directed the company to restructure its network development department-the department responsible for prospecting and recruiting dentists to join networks serving the Medicaid population. Def.'s Facts ¶¶ 13, 15. The owner envisioned the department serving a more sophisticated, integral, and substantial role in growing business operations. Def.'s Facts ¶ 15. On April 28, 2014, Scion hired Miranda Richter (a Caucasian woman) to lead the restructuring as the company's network development manager. Def.'s Facts ¶ 17. Makeisha Gross (an African-American woman) was promoted to team lead of the department. Def.'s Facts ¶ 18; EEOC's Statement of Additional Facts ¶ 13, ECF No. 57. At the time Ms. Richter took over as manager, Scion had eight network development representatives, six of whom were African American. Pl.'s Facts ¶ 2.
As part of the restructuring, Scion revamped the job description for its network development representative position "to reflect the talent required to change the face of the department." Pl.'s Facts ¶ 1 (quoting Exhibit 38 to Declaration of Carrie Vance, ECF No. 59-38); Def.'s Facts ¶¶ 20, 26. Scion envisioned the position as focusing on market analysis; evaluation and development; the recruitment, solicitation, and engagement of providers; contract negotiation and execution; and the development, maintenance, and support of provider relationships and networks. See Def.'s Facts ¶¶ 16, 20-29. A separate position-network development support specialist-was created to assume the administrative functions formerly performed by the network development representatives. Scion also added a Bachelor's degree requirement to the job description for the network development representative position.
In late 2014, Scion began the employee-selection process "to sculpt the new face of [the department]," Pl.'s Facts ¶ 1 (quoting Vance Decl., Ex. 38), and authorized Ms. Richter to hire seven permanent network development representatives, Pl.'s Facts ¶ 6. Scion first posted a position opening on October 14, 2014. Def.'s Facts ¶ 56. Nartisha Leija, an African-American woman who had been working at Scion through a staffing agency since May 2014 as a temporary network development representative, applied for the permanent position. Def.'s Facts ¶¶ 1, 33, 56. Ms. Richter had interviewed Ms. Leija and approved of her placement as a temp in the network development department; thus, she knew that Ms. Leija was African American. See Def.'s Facts ¶ 36. According to Scion, Ms. Leija was not qualified for the permanent position because she did not meet the college-degree requirement. Def.'s Facts ¶ 57.
Other applicants, including non-African Americans, were similarly rejected because they lacked a college degree. Def.'s Facts ¶ 58. For example, two minority candidates who, like Ms. Leija, were on *760 temporary assignment at Scion, were passed over because they did not have a degree. See Pl.'s Facts ¶ 4. Scion ultimately hired Meaghan Clohessy, a Caucasian woman who met the degree requirement and was working at Scion as a temporary network development representative. Def.'s Facts ¶ 59.
Scion did, however, hire to two Caucasian individuals who did not possess a college degree: Robert Kastelic and Colleen Cross. See Def.'s Facts ¶¶ 60, 65, 68; Pl.'s Facts ¶ 35. Scion claims that its CEO referred Mr. Kastelic for the position and that neither Ms. Richter nor Freida Campbell, a recruiter for the company, had veto power over the CEO's decision. Def.'s Facts ¶¶ 31, 60-64. Ms. Cross was referred to Scion by an external recruiter. Def.'s Facts ¶ 69. The company did not realize that Ms. Cross lacked a college degree until after she was interviewed and deemed to be an "exceptional candidate." See Def.'s Facts ¶¶ 66, 68. Scion did not want to lose Ms. Cross as a candidate and generally believed that the degree requirement was "hampering [its] ability to find quality candidates." Def.'s Facts ¶¶ 31, 69 (quoting Exhibit E to Declaration of Beth Rabus, ECF No. 44-5). Consequently, on December 11, 2014, the company removed the degree requirement for the network development representative position. Def.'s Facts ¶¶ 32, 70; Pl.'s Facts ¶ 36.
It is unclear if Ms. Cross was "hired" before or after the degree requirement was lifted. In an email dated December 11, 2014, a Scion human resources professional indicated that she had asked Ms. Campbell "to just make the offer [to Ms. Cross] on Tuesday"-two days before the degree requirement was removed. Pl.'s Facts ¶ 36 (quoting Exhibit 72 to Vance Decl., ECF No. 59-72). However, internal discussions from December 12, 2014, suggest that Ms. Cross was offered and accepted the job the day after the degree requirement was removed. See Exhibit A to Declaration of Beth Rabus, ECF No. 71-1; see also Def.'s Facts ¶ 70.
In January 2015, Scion posted a revised job opening for the network development representative position that did not include a college-degree requirement. Def.'s Facts ¶ 71. The company had five openings to fill. See Pl.'s Facts ¶ 8. Scion's first offer was to Kimberly Westmoreland, an African-American woman with chemically straightened hair and a college degree. See Def.'s Facts ¶¶ 72-74; Pl.'s Facts ¶ 62. Scion rescinded the offer when a background check revealed misrepresentations on Ms. Westmoreland's application. See Def.'s Facts ¶¶ 74-79. Ms. Richter was not involved in the decision to rescind Ms. Westmoreland's offer and apparently wanted to continue to pursue her as a candidate despite the misrepresentations. Def.'s Facts ¶ 79.
Scion interviewed two internal candidates for the open positions: Ms. Leija and Barbara Davis, a nonwhite, Hispanic woman who, like Ms. Leija, was working at Scion as a temporary network development representative. See Def.'s Facts ¶¶ 80-97. The company hired Ms. Davis but not Ms. Leija. Both Ms. Richter and Ms. Campbell rated Ms. Davis as the better candidate. Likewise, Ms. Richter did not consider Ms. Leija to be qualified for the permanent position because she performed poorly in her interview, she was unable to demonstrate competency in persuasive communication, and she did not have the skill set Scion desired for the changing role. According to Ms. Richter, Ms. Leija was more service-focused, not sales-focused, and did not have "the analytical planning, methodical type of skill" the company was looking for in the role going forward. Def.'s Facts ¶ 95.
In addition to Ms. Davis, Scion hired three other individuals for the permanent *761 network development representative position: Joseph Stade, Pamela Schwalbach, and Maxwell Lietzau. Def.'s Facts ¶¶ 100-06. All three of those individuals are Caucasian. In total, Ms. Richter hired nine permanent network development representatives. See Pl.'s Facts ¶¶ 2, 5. Eight of those individuals are Caucasian, and the other identified as Hispanic.
On February 23, 2017, Ms. Richter met with Ms. Leija to explain why she was not hired for the permanent position. Def.'s Facts ¶ 98. Scion subsequently worked with Ms. Leija to identify other positions within the company to which she could apply, given her work experience, qualifications, and stated interests. Def.'s Facts ¶¶ 118-19. On or about April 15, 2017, Ms. Leija filed a charge of discrimination with the EEOC, alleging that Scion discriminated against her on the basis of her race by failing to hire her for permanent employment. Def.'s Facts ¶ 2; Pl.'s Facts ¶ 66. Six days later, Scion terminated Ms. Leija's temporary assignment, citing "a slow-down in client demand to build and manage dental networks." Def.'s Facts ¶ 120.
Ms. Gross, team lead of the network development department, also believed that Ms. Leija had not been hired because of her race. See Pl.'s Facts ¶¶ 22, 63. She shared this concern with personnel in Scion's human resources department. Ms. Gross told human resources that Ms. Richter had engaged in other discriminatory practices as well. According to Ms. Gross, Ms. Richter frequently discussed her vision for a "polished" team of professionals, and her comments suggested that she believed African Americans generally did not possess such characteristics. Pl.'s Facts ¶¶ 10-11, 20. For example, on several occasions, Ms. Richter criticized Ms. Gross's and Ms. Leija's afro-textured hairstyle. She also told Ms. Gross that her "ratched," "ghetto" way of speaking interfered with her leadership abilities. Ms. Gross eventually moved on from her role as team lead and accepted a lower paying position with Scion. Pl.'s Facts ¶ 21. She claims that she voluntarily left the network development department because of the discrimination at the hands of Ms. Richter. See Declaration of Makeisha Gross ¶ 15, ECF No. 55.
II. Procedural Background
After finding reasonable cause to believe that Scion violated Title VII, on September 7, 2016, the EEOC filed the present action in the United States District Court for the Eastern District of Wisconsin. The matter was randomly assigned to this Court, and all parties consented to magistrate judge jurisdiction. See Consent to Proceed Before a Magistrate Judge, ECF Nos. 5, 6 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b) ).
The EEOC asserts that Scion discriminated against Ms. Leija on the basis of her race when it refused to hire her for permanent employment in October 2014 and January 2015 and retaliated against Ms. Leija when it terminated her temporary assignment in April 2015. See Complaint ¶ 14, ECF No. 1. The parties subsequently resolved the retaliation claim. See Stipulation of the Parties, ECF No. 34. On January 19, 2018, Scion filed a motion for summary judgment on the EEOC's remaining claims. See Defendant Scion Dental, Inc.'s Motion for Summary Judgment, ECF No. 39; Defendant's Brief in Support of Its Motion for Summary Judgment, ECF No. 46. The EEOC filed a brief in opposition to the motion on February 23, 2018. See Plaintiff EEOC's Memorandum of Law in Opposition to Scion Dental, Inc.'s Motion for Summary Judgment, ECF No. 54. And on March 29, 2018, Scion filed its reply brief. See Defendant's Reply Brief in Support of Its Motion for Summary Judgment, ECF No. 70.
*762 III. Summary Judgment Standard
"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.
A moving party "is 'entitled to a judgment as a matter of law' " when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Still,
a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.
Id. (internal quotation marks omitted).
To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Heft v. Moore , 351 F.3d 278, 282 (7th Cir. 2003) (citing Liberty Lobby , 477 U.S. at 255, 106 S.Ct. 2505 ). "However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." Fitzgerald v. Santoro , 707 F.3d 725, 730 (7th Cir. 2013) (quoting Harper v. C.R. Eng., Inc. , 687 F.3d 297, 306 (7th Cir. 2012) ). "[T]o survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in [its] favor." Fitzgerald , 707 F.3d at 730 (quoting Makowski v. SmithAmundsen LLC , 662 F.3d 818, 822 (7th Cir. 2011) ).
IV. Discussion
The EEOC claims that Scion discriminated against Ms. Leija on the basis of her race in violation of Title VII when it refused to hire her for permanent employment in October 2014 and January 2015. Scion seeks summary judgment on both of these claims.
A. Legal standard
"Title VII prohibits employers from discriminating based on 'race, color, religion, sex, or national origin.' " Morgan v. SVT, LLC , 724 F.3d 990, 995 (7th Cir. 2013) (quoting 42 U.S.C. § 2000e-2(a) ). "To survive summary judgment on a Title VII discrimination claim, a plaintiff must present 'evidence [that] would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [adverse employment action].' " Milligan-Grimstad v. Stanley , 877 F.3d 705, 710 (7th Cir. 2017) (quoting Ortiz v. Werner Enters., Inc. , 834 F.3d 760, 765 (7th Cir. 2016) ).
Nevertheless, the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green , 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) survived the Seventh Circuit's decision in Ortiz , and the parties here have followed that methodology. See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508 , 846 F.3d 216, 224 (7th Cir. 2017). Under McDonnell Douglas , a plaintiff pursuing a refusal-to-hire claim bears the initial burden of establishing *763 that "(1) [she] was a member of a protected class; (2) [she] applied for an open position for which [she] was qualified; (3) [she] did not receive the position; and (4) those who were hired were not in the protected class and had similar or lesser qualifications." Whitfield v. Int'l Truck & Engine Corp. , 755 F.3d 438, 444 (7th Cir. 2014). "If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." Andrews v. CBOCS West, Inc. , 743 F.3d 230, 234 (7th Cir. 2014).
B. Legal analysis
The EEOC has discharged its initial burden of making a prima facie showing of discrimination under Title VII. Ms. Leija is an African-American woman who worked at Scion as a temporary network development representative. In October 2014, Ms. Leija applied for a permanent position with the company, but she was turned down purportedly because she did not have a college degree, a requirement for the position. Scion ultimately hired three non-African American individuals, including two who did not have college degrees. Ms. Leija applied again in January 2015 after Scion removed the degree requirement. She received an interview but was not hired. Instead, Scion hired four more non-African American individuals.
1. The October 2014 opening
With respect to the October 2014 opening, the parties dispute only whether Ms. Leija was qualified for the position. Scion argues that Ms. Leija was not qualified because the position required a college degree and she indisputably did not have one. See Def.'s Br. 16-17; Def.'s Reply 3-5. According to the EEOC, the degree requirement was a pretext for race discrimination, as Scion hired two Caucasian candidates who did not have degrees. Pl.'s Mem. 3, 6-9.
A reasonable factfinder could conclude that Scion refused to hire Ms. Leija in October 2014 because she is African American. All four temporary network representatives applied for the permanent position. Three of the four (including Ms. Leija) were immediately disqualified because they did not have college degrees. The only temp with a degree, Ms. Clohessy, was ultimately hired. Ms. Clohessy also was the only Caucasian of the group. Consequently, a reasonable factfinder could infer that Scion added the degree requirement to single out the only Caucasian internal candidate. The business justification for the degree requirement appears particularly suspect given that Scion promptly discarded the requirement when the company wanted to hire a non-degreed Caucasian person, as discussed below.
Furthermore, the undisputed facts show that the degree requirement was not an absolute disqualifier. While the requirement was still in place, Scion hired Robert Kastelic, a Caucasian man who did not have a college degree. Scion claims that Mr. Kastelic was hired outside the normal process at the sole discretion of the company's CEO. That may be true. But his hiring casts doubt on Scion's sole reason for disqualifying Ms. Leija, thereby raising an inference of discrimination.
Likewise, a factual dispute exists as to whether Colleen Cross (a Caucasian woman) also was hired despite not satisfying the college-degree requirement. Scion interviewed Ms. Cross for the October 2014 opening even though she did not have a college degree. After learning that Ms. Cross did not meet the minimum qualifications for the position, Scion swiftly took steps to eliminate the degree requirement so the company would not lose her as a *764 candidate. Scion maintains that Ms. Cross was not hired until the day after the requirement was lifted, but other evidence suggests that she was offered the job two days prior thereto. Moreover, Scion did not attempt to make any such accommodations for Ms. Leija. A reasonable factfinder therefore could conclude that Scion applied the college-degree requirement to the detriment of African American candidates like Ms. Leija.
2. The January 2015 opening
Scion argues that, even with the removal of the degree requirement, Ms. Leija still did not meet the minimum qualifications for the permanent network development representative position posted in January 2015. See Def.'s Br. 17-19; Def.'s Reply 5-6. According to Scion, Ms. Leija failed to demonstrate during her interview that she was competent in persuasive communication, a skill deemed necessary for the position. Scion further argues that it had legitimate, nondiscriminatory reasons for not hiring Ms. Leija: she did not interview well, she did not possess the skill set envisioned for the revamped position, and she was less qualified than the other applicants. See Def.'s Br. 19-23; Def.'s Reply 5-7.
The EEOC argues that Scion's reasons for not hiring Ms. Leija were pretextual. See Pl.'s Br. 4-20. According to the EEOC, Ms. Richter's goal as network development manager was "to change the face of the department" from black to white. And she accomplished that goal. When Ms. Richter took over in April 2014, six of the eight network development representatives were African American; less than a year later, there were none. The EEOC further contends that the hiring process favored non-African Americans and that Ms. Richter's comments and actions showed bias against African Americans.
The evidence, when viewed as a whole, is sufficient to permit a reasonable factfinder to conclude that Scion refused to hire Ms. Leija in January 2015 because she is African American. While Scion maintains that Ms. Richter simply hired individuals she felt would succeed in the new network development representative position, the inescapable fact is that she hired nine individuals for that position and none were African American. To be sure, such a rudimentary statistical analysis ordinarily would not be sufficient to defeat summary judgment. See, e.g., Hague v. Thompson Distrib. Co. , 436 F.3d 816, 829 (7th Cir. 2006) (noting that plaintiffs "must do more than merely point to race and proclaim: 'Aha! Discrimination' "). But in this case the EEOC has also produced evidence of Ms. Richter's comments about the physical appearance and speaking manner of certain African-American employees. In light of Ms. Richter's stated desire "to change the face" of the network development department, and her comments suggesting that African Americans did not fit the face she was looking for, the statistical evidence presented by the EEOC is sufficient to raise an inference of discrimination.
The fact that Scion offered the same position to Kimberly Westmoreland, another African-American woman, does not conclusively show that the company did not discriminate against Ms. Leija. See Graham v. Bendix Corp. , 585 F. Supp. 1036, 1047 (N.D. Ind. 1984) ("The duty not to discriminate is owed each minority employee, and discrimination against one of them is not excused by a showing the employer did not discriminate against all of them."). The EEOC has offered compelling evidence from which a reasonable factfinder could infer that Scion preferred only African Americans who conformed to a European aesthetic based on the sound of their name, manner of speaking, and hairstyle. See Pl.'s Mem. 20-22. Likewise, a reasonable factfinder could infer that Scion *765 held African-American candidates to a higher standard than members of other races. That is, Scion would consider an African American for the network development representative position only if she, like Ms. Westmoreland, had a college degree. But Scion hired several non-African Americans who did not possess degrees.
Similarly, the fact that Ms. Richter hired Ms. Leija knowing she is African American does not preclude subsequent discrimination against her. Ms. Richter approved of Ms. Leija's placement in her department on a temporary basis, knowing her time with Scion was limited. That decision is not inconsistent with a desire to not have any African Americans permanently in the network development representative position.
V. Conclusion
For all the foregoing reasons, the Court finds that the EEOC has presented sufficient evidence from which a reasonable factfinder could conclude that Scion refused to hire Ms. Leija because she is African American. Scion's motion for summary judgment will therefore be denied.
NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Scion Dental, Inc.'s Motion for Summary Judgment, ECF No. 39, is DENIED .